Dan Jack COMBS, Movant,

v.

Mary Jane COMBS, Respondent.

No. 88–SC–767–DG.

Supreme Court of Kentucky.

Feb. 8, 1990.

As Corrected on Grant of Rehearing
April 13, 1990.

Kathryn Burke, Pikeville, for movant.

Pamela T. Robinette, Henry D. Stratton, Stratton, Mays & Hays, P.S.C., Pikeville, for respondent.

## OPINION OF THE COURT

This case is before the Supreme Court on Discretionary Review from a judgment of the Court of Appeals which reversed and remanded the Pike County Circuit Court's decision granting the Movant's post-decree request to terminate or suspend mainte-

nance payments pursuant to KRS 402.250. We reverse the Court of Appeals and remand to the Pike Circuit Court to enter judgment consistent with this opinion.

The parties to this appeal were married for twenty years prior to the dissolution of their marriage in 1973. At that time, the Movant was ordered to pay Respondent the sum of $1,000.00 per month for maintenance. This amount was later reduced to $800.00 per month, and finally reduced to $500.00 per month on November 6, 1978.

The issue before this Court originated on February 20, 1985, when Movant filed a motion to terminate the existing maintenance order and unilaterally stopped paying court-ordered maintenance. Movant argued to the trial court that maintenance should be terminated due to Respondent's cohabitation with another in a common law marriage or de facto marriage relationship. The trial court concluded from the record that Respondent did not "remarry" and refused to terminate maintenance pursuant to KRS 403.250(2). Nevertheless, the trial court reduced Movant's maintenance payments to zero predicated on changed circumstances, pursuant to KRS 403.250(1). The trial court principally relied on the cohabitation of the Respondent as grounds for changed circumstances, although some consideration was also given to the Movant's reduced financial resources.

The Court of Appeals reversed this determination, finding from the record that Movant's circumstances had not changed sufficiently to justify a modification and holding that it would be "clearly erroneous for the trial judge to find the existing maintenance award unconscionable." The Court of Appeals remanded and directed that judgment be entered ordering payment of the arrearage accumulated since February 4, 1985, plus interest.

Movant filed a Petition for Discretionary Review which was granted by this Court on March 20, 1989.

We perceive the central issue on this appeal to be whether the cohabitation of a maintenance recipient can be grounds for the reduction or termination of maintenance payments due to changed circumstances, pursuant to KRS 403.250(1) or whether such cohabitation constitutes a de facto marriage automatically terminating maintenance pursuant to KRS 403.250(2).

KRS 403.250 provides in relevant part as follows:

(1) ... (T)he provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable ...

(2) Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

In *Wilhoit v. Wilhoit*, Ky., 506 S.W.2d 511 (1974), we defined "unconscionable" as used in KRS 403.250(1) to mean "manifestly unfair or inequitable."

The effect of a maintenance recipient's cohabitation on continued maintenance payments has been examined by the Court of Appeals on two prior occasions. In *Williams v. Williams*, Ky.App., 554 S.W.2d 880 (1977), the Court found that the ex-wife's cohabitation, coupled with the ex-husband's diminished financial resources constituted grounds for termination for maintenance. Implicit in the Court's decision was that the nature of the ex-wife's cohabitation constituted a new financial resource making continued maintenance payments "unconscionable." The decision was predicated upon KRS 403.250(1).

In *Lydic v. Lydic*, Ky.App., 664 S.W.2d 941 (1984), the Court found that the ex-wife's cohabitation did not constitute a de facto remarriage justifying automatic termination of maintenance under KRS 403.-250(2). The Court suggested that its decision might be different if the cohabitating spouse had formed a "lasting relationship."

In the case at bar, the trial court found insufficient evidence to warrant a finding that the maintenance recipient's cohabitation constituted a common-law marriage under Georgia law that should be recognized in Kentucky. We agree. However,

the trial court also found that the maintenance recipient's cohabitation constituted a change in condition justifying the reduction of the maintenance to zero. Evidently, the trial court wanted to maintain jurisdiction in the event there was a change in the cohabitating spouse's relationship, and therefore did not "terminate" the maintenance obligation. The Court of Appeals ruled this was improper. We disagree.

We are persuaded by the rationale of Judge Miller's dissent in *Lydic v. Lydic, supra,* which can best be summarized by the following:

> There is something distasteful in requiring one to subsidize a former spouse, in his or her subsequent cohabitation ...
>
> ... it is insignificant whether the rule terminating maintenance be grounded upon moral circumstances, upon the practical consideration that remarriage or non-marital cohabitation removes the necessity of support or upon some neutral principle of law ... *Lydic* at p. 943

■ We believe that a maintenance recipient's cohabitation can render continued maintenance "unconscionable" if the nature of the cohabitation constitutes a new "financial resource" as contemplated in KRS 403.200(2)(a). There is ample evidence in the case at bar to support the trial court's conclusion that the respondent's cohabitation did constitute a substantial new resource for her since the Court's previous decree of November 5, 1978. As an appellate court, neither the Court of Appeals nor this Court is authorized to substitute its own judgment for that of the trial court on the weight of the evidence, where the trial court's decision is supported by substantial evidence. *Reichle v. Reichle,* Ky., 719 S.W.2d 442 (1986). The trial court in the present case properly considered respondent's cohabitation as a factor in determining that Movant's maintenance obligation should be suspended.

■ We recognize that not every instance of cohabitation constitutes a change in circumstances making continued maintenance "unconscionable." We do not intend by this opinion to open the floodgates to motions to terminate or suspend mainte-

nance payments in every situation in which the maintenance recipient has begun dating, or has formed casual relationships with persons of the opposite sex. While each case stands on its own, the elements to consider are:

1. Duration—It should never be the intention of the Court to allow for maintenance reduction based upon casual "overnights" or dating. A showing of substantially changed circumstances under KRS 403.250(1) based upon cohabitation, necessarily involves proof of some permanency or long-term relationship.

2. Economic Benefit—The relationship must be such to place the cohabitating spouse in a position which avails that spouse of a substantial economic benefit. The scope and extent of the economic benefit should be closely scrutinized. If the "cohabitation" does not change the cohabitating spouse's economic position, then reductions should not be permitted.

3. Intent of the Parties—Does it appear that the cohabitating spouse is avoiding re-marriage to keep maintenance? Does it appear from the circumstances that the cohabitating parties intend to establish a "lasting relationship?"

4. Nature of the Living Arrangements—Does it appear that the cohabitation is merely a space sharing situation or is there one common household?

5. Nature of the Financial Arrangements—Is there a "pooling of assets?" Is there actually a joint or team effort in the living arrangement? Who pays the bills and how are they paid?

6. Likelihood of a Continued Relationship—Does it appear that the relationship will continue in the future? Do the parties intend the relationship to continue indefinitely?

■ The trial court exercised equitable discretion in reducing maintenance payments to zero instead of terminating the obligation altogether. This decision was probably predicated upon an assumption that termination of maintenance payments ended the matter permanently. However, we hold that trial courts which, in the future, reduce or terminate maintenance un-

der KRS 403.250(1) as a result of a maintenance recipient spouse's cohabitation, retain jurisdiction over the issue to make subsequent modifications if a substantial change occurs in the cohabitation relationship.

■ The payor spouse's financial circumstances do not play any role in our consideration. This opinion is directed only to the issue of what effect a maintenance recipient's cohabitation has on continued maintenance. Therefore, the question of whether the Movant's financial circumstances have changed, and all of the implications of the CR 60.02 motion as raised post-decree and on appeal, are moot. Our decision is based on KRS 403.250(1), not KRS 403.250(2). If the legislature wants to make a policy decision to automatically terminate maintenance upon a recipient's cohabitation, then it should amend KRS 403.250(2) to add cohabitation as a grounds for automatic termination.

■ A collateral issue raised on this appeal is whether the Movant was justified in unilaterally terminating monthly maintenance payments in the amount of $500.00, as of the filing of his Motion on February 20, 1985. We find he was not. We hold that maintenance payments are vested from the entry of a decree and ordinarily can be modified only upon the entry of a subsequent order of the Court to operate prospectively, from the date of entry. The Movant owes the arrearage, plus 12% interest until the entry of the Order of September 23, 1986, suspending maintenance.

We hereby reverse the judgment of the Court of Appeals and remand to the Pike Circuit Court for entry of judgment in accordance with this opinion.

E. ANDRÉ BUSALD, Special Chief Justice, and STEPHEN B. CATRON, TOMMY JOE FRIDY, JAMES T. GILBERT, WILLIAM M. HALL, JOHN R. McGINNIS, and WILLIAM A. MILLER, Jr., Special Justices, sitting.

All concur.