OPINION
 

 JOHNSON, Judge.
 

 Monette Wheeler has appealed from an order of the Fayette Circuit Court entered on October 30, 2002, which reduced her
 
 *278
 
 former husband William Wheeler’s spousal maintenance obligation from $2,000.00 per month to $1,000.00 per month. William has cross-appealed from that same order, arguing that the trial court should have terminated his maintenance obligation altogether. Having concluded that the trial court erred by limiting its inquiry to the consideration of only those changes that had occurred since 1992 when the trial court denied Monette’s first motion to increase maintenance, we vacate and remand for further proceedings.
 

 William and Monette were married on August 29, 1952, when they were both approximately 18-years-old. During the early years of their marriage, Monette completed training at a business school and obtained a secretarial job, while William completed both his undergraduate collegiate studies and medical school.
 
 [1]
 
 After the birth of the couple’s first child in May 1960, William and Monette agreed that Monette would quit her job and care for the children at home. Thereafter, the couple had three more children and Mon-ette did not work outside the home for the remaining years of the marriage.
 

 On April 2, 1979, the Fayette Circuit Court entered a decree dissolving the parties’ marriage which incorporated by reference the parties’ property settlement agreement. The property settlement agreement provided,
 
 inter alia,
 
 that William would pay Monette $2,000.00 per month in spousal maintenance “until she dies or remarries.” The parties further agreed that the maintenance obligation would be “subject to the further orders of the Fayette Circuit Court in the event that either of the parties has a change of circumstances.”
 

 Approximately 13 years later, on November 13, 1992, Monette filed a motion seeking to increase her maintenance to $5,700.00 per month, on the grounds that there had been a “change of circumstances” since the couple’s divorce in 1979. Specifically, Monette noted that her annual gross income had decreased from $33,000.00 in 1979, to $28,403.37 in 1991, and that William’s annual gross income had increased from $112,812.00 in 1979, to $425,329.00 in 1991. On December 23, 1992, the trial court entered an order denying Monette’s motion to increase maintenance.
 

 Following the denial of her motion to increase maintenance, Monette appealed to this Court. In an unpublished decision rendered on March 31, 1995,
 
 [2]
 
 this Court affirmed the trial court’s denial of Mon-ette’s motion to increase maintenance. Specifically, this Court stated:
 

 The terms of the [property settlement] agreement were general; the agreement provided that the maintenance sum “... shall be subject to the further orders of the Fayette Circuit Court in the event that either of the parties has a change in circumstances.” The agreement did not establish any standard for modification.
 

 Since the property settlement agreement did not provide a specific standard for the trial court to follow in determining whether there had been a “change of circumstances,” this Court stated that the unconscionability standard found under KRS
 
 [3]
 
 403.250(1) controlled whether either party, would be entitled to a maintenance modification. Finally, this Court held that the trial court had not abused its discretion by finding that Monette had failed to show a “change in circumstances” which would render the $2,000.00 per month maintenance payment “unconscionable.”
 

 
 *279
 
 On March 12, 2002, William filed a motion seeking to terminate, or in the alternative, reduce his maintenance obligation. In support of his argument that a “change of circumstances” had occurred rendering his $2,000.00 per month maintenance obligation unconscionable, William noted that Monette was receiving Social Security benefits in the amount of $544.00 per month. William also argued that Monette’s relationship with Charles C. Mihalek, a man she began dating after the couple’s divorce in 1979, was “substantial in its nature, and has progressed to the point that they have been living together in Florida.” In her response, Monette not only objected to William’s motion to terminate or reduce maintenance, but she moved the trial court to increase maintenance to $3,000.00 per month.
 

 On July 31, 2002, a hearing was held before the trial court on the parties’ cross-motions to modify maintenance. On September 3, 2002, after considering the evidence offered by both parties, the trial court entered findings of fact and conclusions of law. Among other things, the trial court found that Monette’s receipt of $544.00 per month in Social Security benefits was attributable to her marriage to William. Thus, the trial court ruled that William was entitled to a $544.00 per month offset in his maintenance obligation, due to Monette’s receipt of Social Security benefits.
 

 In addition, the trial court found that Monette had “an intense social relationship” with Mihalek, and that Mihalek helped her significantly with various expenses. Hence, the trial court ruled that William was entitled to an additional offset of $456.00 per month in his maintenance obligation due to Mihalek’s “contributions” toward Monette’s expenses.
 

 On October 30, 2002, the trial court entered an order granting William’s motion to reduce maintenance, and denying Mon-ette’s motion to increase maintenance. The trial court ordered that William’s maintenance obligation be reduced from $2,000.00 per month to $1,000.00 per month. Monette’s appeal and William’s cross-appeal from that order followed.
 
 [4]
 

 We first address Monette’s argument that in determining whether William had shown a “substantial and continuing” change so as to render the maintenance obligation unconscionable, the trial court erred by limiting its inquiry to those changes that had occurred since 1992, when the trial court considered Monette’s first motion to increase maintenance. In response, William claims that the doctrine of
 
 res judicata
 
 precluded the trial court from considering events prior to the trial court’s denial of Monette’s motion to increase spousal maintenance in 1992.
 

 This issue appears to be one of first impression in Kentucky. As a general rule,
 
 res judicata
 
 precludes the relitigation of issues that have been previously decided between two or more parties.
 
 [5]
 
 In the context of motions to modify spousal maintenance, there is considerable support for the proposition that “[wjhere the court has decided one petition for modification, the order entered in that proceeding is
 
 res judicata,
 
 and a second petition for modification thus cannot be entertained unless it can be shown that there has been a substantial change of circumstances since the earlier decision was made.”
 
 [6]
 
 In
 
 Micheu v.
 
 
 *280
 

 Micheu,
 

 [7]
 

 the Louisiana Court of Appeals framed the issue as follows:
 

 The determination, then, to be made is — has a substantial change of circumstances occurred since the award of alimony, or since the last change in that award? This analysis is to be made each time either spouse files a rule to increase, decrease, or terminate alimony previously granted.
 
 [8]
 

 However, unlike
 
 Micheu
 
 and the other cases cited in support of this rule, in the case
 
 sub judice
 
 there has been no prior
 
 modification
 
 of the maintenance obligation. While the trial court did consider Monette’s motion to increase maintenance in 1992, it found that Monette had failed to demonstrate a sufficient change in circumstances to warrant an increase in maintenance.
 

 Comment c to Section 13 of the
 
 Re statement (Second) of Judgments
 
 discusses the doctrine of
 
 res judicata
 
 as it relates to judgments which are subject to subsequent modification:
 

 A judgment concluding an action is not deprived of finality for purposes of res judicata by reason of the fact that it grants or denies continuing relief, that is, requires the defendant, or holds that the defendant may not be required, to perform acts over a period of time. Judgments of these types are rendered typieally in actions for injunctions, specific performance, alimony, separate maintenance, and child support and custody.
 

 The res judicata consequences of such judgments follow normal lines while circumstances remain constant, but those consequences may be affected when a material change of the circumstances occurs after the judgment. Thus if the judgment denied on the merits the continuing relief sought, but there has been a later material change of conditions, a new claim may arise upon the later facts
 
 (to be considered sometimes in combination with the
 
 old), and that claim will be held not barred by the previous judgment [emphasis added].
 
 [9]
 

 Therefore, since no modification was made when the trial court considered Mon-ette’s first motion to increase maintenance in 1992, the doctrine of
 
 res judicata
 
 did not preclude the trial court from considering all of the changes which may have occurred since the original spousal maintenance obligation was established in 1979. Accordingly, the trial court erred by limiting its inquiry to the consideration of only those changes that had occurred since 1992.
 

 We next turn to Monette’s argument that the trial court erred by reducing William’s maintenance obligation by $544.00
 
 *281
 
 per month due to her receipt of Social Security benefits. Monette relies on
 
 Williams v.
 
 Williams,
 
 [10]
 
 where our Supreme Court held that a pre-1972 property settlement agreement, which made no provision for an adjustment of maintenance due to the subsequent receipt of Social Security benefits, was not subject to modification if the agreement was deemed to be a final and complete settlement of the parties’ property rights.
 
 [11]
 

 Monette notes that the property settlement agreement in the case at bar does not specifically provide for an adjustment of maintenance in the event either spouse begins to receive Social Security benefits. Hence, Monette argues that
 
 Williams
 
 controls and that the trial court erred by modifying the maintenance obligation. We disagree.
 

 Prior to our General Assembly’s enactment of Kentucky’s no-fault divorce law in 1972, the determination of whether a maintenance obligation in a settlement agreement was subject to modification turned on whether the provision dealing with maintenance was deemed to be an integral part of a final and complete property settlement agreement, or whether the maintenance provision was simply deemed to be an agreed upon amount for spousal support.
 
 [12]
 
 If the provision fell into the former category, the maintenance obligation was not subject to modification, since the court did not have the authority to modify a complete and binding contract entered into by the parties.
 
 [13]
 
 However, if the provision fell into the latter category, the court retained the authority to modify the maintenance obligation upon a showing of a sufficient change in circumstances.
 
 [14]
 

 However, the Legislature’s enactment of Kentucky’s no-fault divorce law significantly changed the mode of analysis with respect to this modification issue.
 
 [15]
 
 Pursuant to KRS 403.180(6), the terms in a settlement agreement related to maintenance are subject to modification
 
 unless the agreement expressly prohibits modification.
 
 Further, KRS 403.250(1) specifically states that “the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable.”
 

 In
 
 Williams,
 
 the Supreme Court was careful to note that the agreement at issue was a pre-1972 property settlement agreement. As such, the Court looked to determine whether the maintenance provision was an integral part of a final and complete property settlement agreement. After finding that the parties’ 1970 property settlement agreement was a “final settlement of all of the parties’ property rights as distinguished from a provision for a mere right of support,” the Court held that the maintenance provision was not subject to modification.
 

 In the case
 
 sub judice,
 
 the property settlement agreement was entered into in
 
 *282
 
 1979. Therefore, the modification rules governing pre-1972 settlement agreements do not apply. Instead, whether the maintenance provision in the case at bar is subject to modification depends upon the application of KRS 403.180 and KRS 403.250; thus Monette’s reliance on
 
 Williams
 
 is misplaced. Accordingly, if the standard established under KRS 403.180 and KRS 403.250 is satisfied, Monette’s receipt of Social Security benefits could support a reduction in William’s maintenance obligation.
 

 As we mentioned previously, the trial court reduced William’s maintenance obligation by $544.00 per month after finding that “she would not have received [these benefits] but for the marriage to [William].” We hold that this factual finding by the trial court is clearly erroneous.
 
 [16]
 
 Our review of the record shows that only 47% of Monette’s Social Security benefits of $544.00 per month was derived from her marriage to William. The remaining 53% was derived from her own earnings record. Hence, the trial court clearly erred by finding that the entire $544.00 per month was attributable to Monette’s marriage to William. Accordingly, we vacate that portion of the trial court’s order granting William a $544.00 per month offset in his maintenance obligation, and remand this matter with directions for the trial court to reconsider, in light of the changes that have occurred since 1979, whether William is entitled to a reduction under KRS 403.180 and KRS 403.250.
 

 Next, we turn to Monette’s claim that the trial court erred by reducing William’s maintenance obligation by $456.00 per month due to her relationship with Mihalek. In particular, Monette argues that her relationship with Mihalek did not, as a matter of law, “equate to cohabitation.” However, Monette’s focus on the legal concept of “cohabitation” overlooks the proper inquiry with respect to this issue.
 
 [17]
 

 In
 
 Combs v. Combs,
 

 [18]
 

 the Supreme Court held that where the former wife was able to enjoy a new “financial resource” as a result of her subsequent relationship with another man, the continuation of the former husband’s maintenance obligation could be deemed “unconscionable,” thereby justifying a reduction in the former husband’s maintenance obligation.
 
 [19]
 
 Although the former wife in
 
 Combs
 
 had begun “cohabitating” with another man, whether- or not the couple’s relationship amounted to “cohabitation” was not at issue.
 
 [20]
 
 Rather, the Court’s analysis fo
 
 *283
 
 cused on whether the nature of the former wife’s new relationship was such that there had been a “change of circumstances” under KRS 403.250(1).
 
 [21]
 

 The
 
 Combs
 
 Court went on to list six elements for a trial court to consider when determining whether a former spouse’s new relationship with another individual justifies a reduction in the obligor spouse’s maintenance obligation:
 

 1. Duration — It should never be the intention of the Court to allow for maintenance reduction based upon casual “overnights” or dating. A showing of substantially changed circumstances under KRS 403.250(1) based upon cohabitation, necessarily involves proof of some permanency or long-term relationship.
 

 2. Economic Benefit — The relationship must be such to place the cohabitating spouse in a position which avails that spouse of a substantial economic benefit. The scope and extent of the economic benefit should be closely scrutinized. If the “cohabitation” does not change the cohabitating spouses economic position, then reductions should not be permitted.
 

 3. Intent of the Parties — Does it appear that the cohabitating spouse is avoiding re-marriage to keep maintenance? Does it appear from the circumstances that the cohabitating parties intend to establish a “lasting relationship?”
 

 4. Nature of the Living Arrangements — Does it appear that the cohabitation is merely a space sharing situation or is there one common household?
 

 5. Nature of the Financial Arrangements — Is there a “pooling of assets?” Is there actually a joint or team effort in the living arrangement? Who pays the bills and how are they paid?
 

 6.Likelihood of a Continued Relationship — Does it appear that the relationship will continue in the future? Do the parties intend the relationship to continue indefinitely?
 

 Finally, the Court in
 
 Combs
 
 was careful to note that if a trial court reduces or terminates an obligor spouse’s maintenance obligation based upon a recipient spouse’s relationship with another individual, the trial court “retain[s] jurisdiction over the issue to make subsequent modifications if a substantial change occurs in the [new] relationship.”
 
 [22]
 

 As we discussed previously, in considering the parties’ cross-motions to modify maintenance, the trial court erred by limiting its inquiry to the consideration of only those changes that had occurred since 1992. Hence, because of this error, that portion of the trial court’s order reducing William’s maintenance obligation by $456.00 per month must be vacated and this matter is remanded with directions to consider the six elements listed in
 
 Combs,
 
 together with the changes that have occurred since 1979, to determine whether Monette’s relationship with Mihalek constitutes grounds for a modification of William’s maintenance obligation.
 

 On remand, the trial court must examine Monette’s relationship with Mihalek to determine whether the nature of that relationship is such that it constitutes a new “financial resource” for her. While the couple’s living arrangements is certainly a factor to consider, it is “not dispositive of the issue, nor is it necessarily the focus of the inquiry. In
 
 Combs,
 
 the Court recognized that not every instance of cohabitation constitutes a change in circumstances” which would justify a reduction in maintenance.
 
 [23]
 
 The converse is also true,
 
 i.e.,
 
 
 *284
 
 “cohabitation,” as the term is defined in
 
 Cook,
 
 is not a prerequisite for reducing an obligor spouses maintenance obligation if there has otherwise been a sufficient change of circumstances under KRS 403.250(1).
 
 [24]
 
 Accordingly, that portion of the trial courts order reducing William’s maintenance obligation by $456.00 per month due to Monette’s relationship with Mihalek is vacated and this matter is remanded for further proceedings consistent with this Opinion.
 

 Finally, we address William’s argument on his cross-appeal that the trial court erred by not terminating his maintenance obligation altogether. Once again, we note that in considering the parties’ cross-motions to modify maintenance, the trial court erred by limiting its inquiry to the consideration of only those changes that had occurred since 1992. Therefore, this is an issue which must be reexamined once the trial court makes the appropriate factual findings using 1979 as the benchmark year to determine whether a sufficient change of circumstances has occurred. Accordingly, that portion of the trial court’s order denying William’s motion to terminate his maintenance obligation is vacated and this matter is remanded for further proceedings consistent with this Opinion.
 

 ALL CONCUR.
 

 [1]
 

 . William is an orthopedic surgeon.
 

 [2]
 

 . 1993-CA-000184-MR.
 

 [3]
 

 .Kentucky Revised Statutes.
 

 [4]
 

 . Monette has not appealed from that portion of the trial court’s order denying her motion to increase maintenance.
 

 [5]
 

 .
 
 Napier v. Jones By and Through Reynolds,
 
 Ky.App., 925 S.W.2d 193, 195 (1996).
 

 [6]
 

 . 24A AmJur.2d
 
 Divorce and Separation
 
 § 822 (2003).
 

 [7]
 

 . 440 So.2d 240, 242 (La.Ct.App.1983).
 

 [8]
 

 .
 
 See also Hosford v. Hosford,
 
 362 So.2d 973, 974 (Fla.Ct.App.1978)(holding that "[o]nce the court has found sufficient change in circumstances to require modification and thereupon enters an order, the facts and circumstances supporting that modification may not be revisited by the court as a basis for further modification”);
 
 Marriott v. Marriott,
 
 347 Ill.App. 372, 106 N.E.2d 876, 878 (1952)(stating that a previous order granting a modification of maintenance was
 
 res judicata,
 
 and that the circumstances which justified the original modification could not be used to support a subsequent motion to modify); and
 
 Farnsworth v. Farnsworth,
 
 553 S.W.2d 485, 487 (Mo.Ct.App.1977)(holding that "the date of the change of circumstances to be used would be the last prior modification rather than the circumstances existing on the date of the original decree”).
 

 [9]
 

 . Restatement (Second) of Judgments
 
 § 13, comment c (1982).
 
 See also In re Marriage of Pedersen,
 
 237 Ill.App.3d 952, 178 Ill.Dec. 835, 605 N.E.2d 629, 633 (1992)(noting that while the husband could not rely on those circumstances which justified a prior modification of maintenance, "[a] different result might obtain if the [previous motion to modify] had not actually resulted in a modification”).
 

 [10]
 

 . Ky., 789 S.W.2d 781 (1990).
 

 [11]
 

 .
 
 Id.
 
 at 782.
 

 [12]
 

 .
 
 See Richey v. Richey,
 
 Ky., 389 S.W.2d 914, 919 (1965)(stating that when the issue is modification of a maintenance obligation, the key determination is whether the maintenance provision is an integral part of a final and complete property settlement agreement).
 

 [13]
 

 . See Renick v. Renick,
 
 247 Ky. 628, 57 S.W.2d 663 (1933).
 

 [14]
 

 .
 
 See Boehmer v. Boehmer,
 
 259 Ky. 69, 82 S.W.2d 199 (1935).
 

 [15]
 

 .
 
 See Scott v. Scott,
 
 Ky., 529 S.W.2d 656, 657 (1975)(noting that KRS 403.180(6), which deals with the modification of maintenance obligations in settlement agreements, states a different rule than that as announced in
 
 Richey,
 
 supra).
 

 [16]
 

 .
 
 See
 
 Kentucky Rules of Civil Procedure 52.01; and
 
 Weiand v. Board of Trustees of Kentucky Retirement Systems,
 
 Ky., 25 S.W.3d 88, 92 (2000) (stating that "[t]he findings of a trial judge sitting without jury may not be set aside unless clearly erroneous”).
 

 [17]
 

 .
 
 See Cook v. Cook,
 
 Ky., 798 S.W.2d 955, 957 (1990). In
 
 Cook,
 
 our Supreme Court, quoting from
 
 Black's Law Dictionary,
 
 5th edition, defined "cohabitation” as:
 

 To live together as husband and wife. The mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations.
 

 The Court went on to hold that under the facts of
 
 Cook,
 
 the former wifes relationship with another man did not constitute "cohabitation,” and that the former husband was therefore not entitled to have his maintenance obligation terminated under the parties' property settlement agreement.
 

 [18]
 

 . Ky., 787 S.W.2d 260, 262 (1990).
 

 [19]
 

 .
 
 Id.
 
 The Court stated "[w]e believe that a maintenance recipients cohabitation can render continued maintenance 'unconscionable' if the nature of the cohabitation constitutes a new 'financial resource’ as contemplated in KRS 403.200(2)(a).”
 

 [20]
 

 .
 
 See Cook, supra
 
 at 957 (1990)(stating that "[w]hether or not conduct amounted to cohabitation was not an issue in
 
 Combs
 
 ...”).
 

 [21]
 

 .
 
 Combs,
 
 787 S.W.2d at 262.
 

 [22]
 

 .
 
 Id.
 
 at 263.
 

 [23]
 

 .Id.
 
 at 262.
 

 [24]
 

 .
 
 See Williams v. Williams,
 
 Ky.App., 554 S.W.2d 880, 881 (1977)(affirmmg a trial court's decision to terminate maintenance where it was discovered that the obligor spouse’s financial situation had "waned,” while the recipient spouse had "done better” because of her new relationship with "a gentlemen of some means