RENDERED: SEPTEMBER 23, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1184-MR

PAULA MCCORMICK AYER                                     APPELLANT

v.                  APPEAL FROM MCLEAN CIRCUIT COURT
                    HONORABLE BRIAN WIGGINS, JUDGE
                    ACTION NO. 18-CI-00113

DAVID AYER                                                 APPELLEE

OPINION
REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND THOMPSON, K., JUDGES.

CETRULO, JUDGE: The McLean Circuit Court granted Appellee David Ayer's ("David") motion to terminate maintenance to Appellant Paula McCormick Ayer ("Paula"). Paula filed a motion to alter, amend, or vacate the order terminating maintenance, which the circuit court denied. Paula appealed.

**BACKGROUND AND PROCEDURAL HISTORY**

After 31 years of marriage, Paula and David filed for divorce. In December 2018, the parties entered into a property settlement agreement ("Agreement"), which detailed the division of their real property, personalty, and marital debts; and established that David would pay Paula maintenance in the amount of $400 per month until her death or remarriage. The last provision of the Agreement contained a catch-all, non-modification statement in the "DISCLOSURE TO COURT" section, which stated that "no party shall have standing to obtain modification of this Agreement or the final decree entered pursuant thereto, except for issues of child support, custody and visitation, as allowed by law." The circuit court incorporated the Agreement into the dissolution decree entered in January 2019.

Two years later, in April 2021, David filed a motion to terminate maintenance because Paula had been cohabiting with her paramour. The fact that Paula cohabited with her paramour was not disputed. David claimed that her "household partner" had added resources to Paula's income, which constituted a "substantial change in circumstance that is continuing in nature."[1]

---

[1] The motion also asserted that Paula's circumstances had significantly changed because she had sold the marital house she had received in the dissolution, received a portion of David's 401k since the divorce, and had started working. The circuit court did not take these additional arguments into account when ruling on David's motion; therefore, we need not address these arguments.

In July 2021, the circuit court heard David's motion to terminate maintenance. Paula testified that she had been cohabiting with a third party with whom she was romantically involved. She also explained that she planned to continue the relationship and cohabitation. Paula testified that she shared a bank account with her paramour and that he deposited his paychecks into their joint account. She explained, however, that he used those deposited funds to pay only his bills and did not use them for household expenses. Paula also testified that her account balances had decreased since her divorce, despite her cohabitation and depositing her wages and house proceeds in her accounts.

Following the hearing, both parties submitted memoranda in support of their positions. In July 2021, the circuit court entered its order granting David's motion. The circuit court analyzed *Lockhart v. Lockhart*, 566 S.W.3d 571 (Ky. App. 2018), and found that Paula was cohabiting with a man with whom she was romantically involved; that it was a long-term relationship; and that they shared a bank account, into which her paramour deposited his paycheck. Therefore, the circuit court concluded that Paula's new living situation constituted a change in circumstances that rendered David's continued maintenance payments unconscionable.

In September 2021, Paula moved to alter, amend, or vacate the circuit court's July order, which the circuit court denied. Paula now appeals, arguing (1)

that KRS[2] 403.180(6) prohibits the circuit court from modifying or terminating maintenance when the Agreement stated that its terms were non-modifiable; and (2) that the circuit court abused its discretion when it determined that Paula's cohabitation constituted a new financial resource that made David's continued payments unconscionable.

## STANDARD OF REVIEW

The first issue, regarding the interpretation of KRS 403.180(6), is a matter of law and subject to *de novo* review. *Harms v. Chase Home Finance, LLC*, 552 S.W.3d 516, 519 (Ky. App. 2018) (citing *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 612 (Ky. 2004)).

The second issue, regarding the circuit court's determination on the motion to modify maintenance, is reviewed for an abuse of discretion. *Block v. Block*, 252 S.W.3d 156, 159 (Ky. App. 2007) (citing *Bickel v. Bickel*, 95 S.W.3d 925, 927-28 (Ky. App. 2002)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Holland v. Herzfeld*, 610 S.W.3d 360, 363 (Ky. App. 2020) (citation omitted). If there is substantial evidence supporting the circuit court's determination, this Court cannot substitute its judgment for that of the circuit court. *Id.* (citation omitted).

___

[2] Kentucky Revised Statute.

## ANALYSIS

First, Paula argues that KRS 403.180(6) prohibits the circuit court from modifying or terminating maintenance when the Agreement stated that its terms were non-modifiable. KRS 403.180(6) provides that "[e]xcept for terms concerning the support, custody, or visitation of children, the decree may expressly preclude or limit modification of terms if the separation agreement so provides. Otherwise, terms of a separation agreement are automatically modified by modification of the decree."

Kentucky Courts have routinely interpreted that to mean that KRS 403.180(6) permits the enforcement of non-modifiability clauses in separation agreements and thereby does not permit modification in such cases. *Lockhart*, 566 S.W.3d at 574 ("by enacting KRS 403.180(6), our legislature permits the enforcement of a non-modifiability clause in a separation agreement."); *Jaburg v. Jaburg*, 558 S.W.3d 11, 13 (Ky. App. 2018) ("Under KRS 403.180(6), the parties to a dissolution of a marriage 'may expressly preclude or limit modification of terms if the separation agreement so provides.'").

However, in *Lockhart*, this Court distinguished cases in which the payee (here, Paula) cohabited following a dissolution, even where the settlement agreement specifically listed remarriage – not cohabitation – as the threshold action to terminate maintenance. *Lockhart*, 566 S.W.3d at 571. There, the circuit

court had upheld the maintenance schedule under KRS 403.180(6) because the settlement agreement, like here, contained a catch-all non-modification provision. *Id.* at 573. Affirming the circuit court, in part, this Court previously found that the non-modification provision was valid, and the agreement precluded modification. *Id.*

Importantly, though, this Court's analysis did not end there. This Court also reversed the circuit court in part, concluding that the circuit court had erred when it found that the payee's "cohabitation was not a ground to terminate maintenance under the terms of the [a]greement." *Id.* at 575. The *Lockhart* Court remanded in part and instructed the circuit court to address whether the payee's "cohabitation would be grounds to terminate maintenance[,]" under *Combs v. Combs*, 787 S.W.2d 260 (Ky. 1990). *Lockhart*, 566 S.W.3d at 576.

Here, the circuit court determined that the Agreement contained a catch-all non-modification provision but held that, like *Lockhart*, there was a question as to whether the payee's cohabitation with her paramour had created a new financial resource. Using *Lockhart*, the circuit court herein stated that it had conducted the cohabitation analysis under *Combs* and found that Paula's cohabitation was grounds for termination of her maintenance. Paula disagrees, arguing that the circuit court abused its discretion when it made that determination.

Thus, we must turn to *Combs* for further guidance. In *Combs*, the Kentucky Supreme Court concluded that the receiving spouse's cohabitation could render continued maintenance "unconscionable" if the nature of the cohabitation constituted a new financial resource. *Combs*, 787 S.W.2d at 262. Although *Combs* did not involve a non-modification provision, this Court, in *Lockhart*, relied on *Combs*' cohabitation analysis as a second step of its maintenance review. As such, this Court turned to the Kentucky Supreme Court's six-factor *Combs* test to determine whether it should terminate maintenance due to the payee cohabiting. *Lockhart*, 566 S.W.3d at 576.

In *Combs*, the Kentucky Supreme Court explained that a circuit court should analyze certain factors to determine "whether the cohabitation of a spouse who is receiving maintenance entitles the obligor to a termination of maintenance." *Id*. at 575 (citing *Combs*, 787 S.W.2d at 262). The factors included: (1) the duration of the relationship; (2) the economic benefit to the receiving spouse from the relationship; (3) the intention of the parties; *e.g.*, whether the cohabiting spouse is avoiding remarriage to keep maintenance and whether the couple intends to establish a "lasting relationship"; (4) the nature of the living arrangements; (5) the nature of the financial arrangements; and (6) the likelihood of a continued relationship. *Combs*, 787 S.W.2d at 262.

Here, Paula does not deny that she cohabited with her paramour, nor that she shared a bank account with him, into which he deposited his paychecks. However, the circuit court found only that she was in a long-term relationship. The court did not make findings as to what it considered "long-term" or how long Paula had actually cohabitated. There was no consideration of the intention of the parties, including whether Paula was avoiding remarriage in order to keep receiving maintenance or whether the couple intended to establish a "lasting relationship." Most importantly, the opinion does not indicate that the "scope and extent of the economic benefit [was] closely scrutinized." *Id.* The court's only findings on financial issues were that "[s]he shares a bank account with this man, and he deposits his paycheck into the account." Such initial findings do not tell us how much money this man deposits, how the money is used, or if such deposits inured to Paula's benefit in any significant manner.

As stated above, this Court may only reverse the circuit court when there is an abuse of discretion; this Court may not substitute its own findings of fact in place of the circuit court. *Holland*, 610 S.W.3d at 363. However, despite the statement that the circuit court had analyzed the substantial evidence "in light of the factors set out in *Combs*[,]" we do not believe there are sufficient findings for the Court to have concluded that David's maintenance obligation should end. Specifically, applying the factors in *Combs*, the circuit court must determine

-8-

whether her cohabitation constituted such a change in circumstances as to render continued maintenance payments unconscionable under KRS. 403.250(1).[3]

Here, the circuit court seemingly ignored the important fact that the parties had been married for 31 years. "[I]n situations *where the marriage was long term*, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appears dismal," our family courts award maintenance for longer periods or in greater amounts. *Clark v. Clark*, 782 S.W.2d 56, 61 (Ky. App. 1990) (emphasis added). Based upon the length of her marriage alone, Paula could potentially have been awarded more maintenance by the circuit court had she not agreed to the (non-modifiable) maintenance amount of $400.00 per month. Furthermore, we have no way of knowing whether or not she accepted future maintenance payments from David in lieu of significant marital property interests. The circuit court has not given us any of the findings to support its ruling. We know very little about the parties, their resources, or their needs. Thus, we believe the circuit court's ruling does appear "unreasonable, unfair, or unsupported by sound legal principles." *Holland*, 610 S.W.3d at 363.

While the court below stated that it considered the *Combs* factors, there is no indication of that in the order under appeal. As in *Lockhart*, we remand

---

[3] "(1) Except as otherwise provided in subsection (6) of KRS 403.180, the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable."

this matter to the court below to address those factors and whether Paula's co-habitation would be grounds to terminate maintenance under *Combs*.

**CONCLUSION**

Therefore, we REMAND for findings consistent with this Opinion.

CLAYTON, CHIEF JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, DISSENTING:  Respectfully, I dissent. The non-modification clause found in the parties' marital settlement agreement should be recognized as controlling and enforced.  David Ayer did not present evidence of either fraud or bad faith in order to avoid the agreement under basic contract principles.  Furthermore, he did not provide evidence sufficient to find the agreement's continuing enforcement to be "unconscionable" as that term is understood in the Commonwealth.  Since the record is devoid of substantial proof in either category, David should not be allowed to avoid the terms of the agreement.

With the narrow exceptions of "terms concerning the support, custody, or visitation of children," KRS 403.180(6) recognizes parties' rights to enter separation agreements that "expressly preclude or limit modification of terms" for all other matters including maintenance.  The language of this statute is clear and so are the terms of the parties' agreement.  Pursuant to the clear and

-10-

unambiguous language of the parties' agreement, the only matters which could ever be revisited by the court were "child support, custody and visitation, as allowed by law[;]" those last clauses being nothing more than the parties' acknowledgment of the courts' continuing authority over those three issues and the specific language of KRS 403.180(6). If David had any expectation that maintenance would also be modifiable, he should have specifically included maintenance as a fourth area of potential modification following child support, custody, and visitation. At a minimum, the last clause "as allowed by law" (which only addresses child support, custody, and visitation in the preceding clause) could have been changed to "or as allowed by law" which would then at least give an indication that other terms of the settlement agreement would remain open to statutory or judicial modification.

"A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky.App. 2001) (citing *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764 (Ky.App. 1985)).

Settlement agreements "are a type of contract and therefore are governed by contract law[.]" *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citation omitted). Absent an ambiguity in the contract, which is not

present here, a contract will be "enforced strictly according to its terms[.]" *Id.* at 106. In negotiating the terms of a marital settlement agreement, "the parties may settle their affairs *with a finality beyond the reach of the court's continuing equitable jurisdiction* elsewhere provided." *Brown v. Brown*, 796 S.W.2d 5, 8 (Ky. 1990) (emphasis added). The parties' arms-length agreement, originally accepted by the court in its decree, should have been recognized as "final" on the issue of maintenance and Paula is entitled to enforcement of the settlement agreement.

The only way maintenance would terminate in accordance with the parties' agreement would be by death or remarriage, neither of which has occurred. David could have specified in the agreement that cohabitation could also be considered by the court as grounds for modification, but he did not. This is where the court's analysis should have stopped and it should have denied David's motion to modify or terminate his maintenance obligation.

If, despite the presence of a non-modification clause, courts find themselves tempted to rewrite an arms-length settlement agreement, they must be cautioned to do so only under extreme circumstances where continued enforcement by our courts would be so unjust, so wholly inequitable, as to be "unconscionable."

While I agree with the majority's instructions for family courts in such circumstances to apply each of the factors in *Combs v. Combs*, 787 S.W.2d 260 (Ky. 1990), to determine whether cohabitation constitutes "changed

-12-

circumstances so substantial and continuing as to make [continued maintenance] unconscionable[,]" *id.* at 261, under KRS 403.250(1), in my opinion such admonition does not go far enough.

In *Combs*, the Kentucky Supreme Court was faced with the situation where a former spouse who had been awarded maintenance, subsequently was cohabitating. The Court looked to KRS 403.250(1), which provides in relevant part as follows: "[T]he provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable[.]" *Combs*, 787 S.W.2d at 261.

The Court did not determine that cohabitation equated to remarriage under KRS 403.250(2) (termination upon remarriage), instead it concluded that a spouse's cohabitation *could* render continued maintenance "unconscionable" under KRS 403.250(1), if the nature of the cohabitation constituted "a new financial resource as contemplated in KRS 403.200(2)(a)."[4] *Id.* at 262 (internal quotation marks omitted). Importantly though, there was no non-modification provision, like the one Paula and David entered, present in the *Combs* case.

_____

[4] KRS 403.200(2)(a) provides:

> The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including . . . [t]he financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently[.]

-13-

I must now note that the opinion cited by the majority in

*Lockhart v. Lockhart*, 566 S.W.3d 571 (Ky.App. 2018) (*Lockhart II*), had a

significant procedural history which casts light on its rare decision to only

*potentially* ignore a non-modification clause.  Our Court had seen the Lockharts

before and held that their non-modifiable agreement was just that, non-modifiable.

*Lockhart v. Lockhart*, No. 2012-CA-000219-MR, 2013 WL 5969839 (Ky.App.

Nov. 8, 2013) (unpublished) (*Lockhart I*).  However, in that first appeal we noted

one potential safeguard that the husband may still be able to assert an impossibility

defense to any motion for contempt arising from his failure to pay maintenance.

*Lockhart I*, 2013 WL 5969839, at *2.  That is precisely what transpired.  The

husband was later found in contempt and faced jail.

After Mr. Lockhart was found in contempt for failure to pay

maintenance, this Court in *Lockhart II* determined to extend the analysis of a

spouse's cohabitation beyond the "unconscionability standard" set forth in KRS

403.250(1) and *Combs*, and determined to conduct a review despite there being an

otherwise enforceable non-modification clause like those recognized by KRS

403.180(6).  In doing so, this Court quoted part of Judge Miller's previous dissent

in the matter of *Lydic v. Lydic*, 664 S.W.2d 941 (Ky.App. 1983) (Miller, J.,

dissenting), where he stated:

> However, "[t]here is something distasteful in requiring
> one to subsidize a former spouse, in his or her subsequent

cohabitation." *Id.* at 261, (quoting *Lydic v. Lydic*, 664
S.W.2d 941, 943 (Ky.App. 1983) (Miller, J., dissenting)).

*Lockhart II*, 566 S.W.2d at 575.

It is important to note that when Judge Miller wrote his dissent in

*Lydic*, there was no non-modification agreement present and therefore, as in

*Combs*, Judge Miller was not discussing the discontinuance of maintenance

payments *despite* there being an enforceable non-modification agreement under

KRS 403.250(2) or KRS 403.180(6).

Further distinguishing our present case is that both the opinion in

*Lockhart II*, and Judge Miller's dissent in *Lydic*, were written under extreme

factual circumstances not present in this case.  In his dissent in *Lydic*, Judge Miller

noted the full nature of the particular cohabitation arrangement at issue:

> True, Mrs. Lydic has not remarried in a traditional sense,
> but has chosen a lifestyle having the attributes of
> marriage.  She is [cohabitating] with a member of the
> opposite sex and has placed her townhouse, a significant
> part of her estate, in survivorship with her male
> cohabitor.  Every indication is that her cohabitation is
> intense and of contemplated endurance.  In short, it is as
> permanent as a matrimonial affair.  Indeed, if her
> relationship with her nonmarital cohabitor is to be
> dissolved, it may well involve a judicial determination of
> property rights.

*Lydic*, 664 S.W.2d at 944.

In fact, at the time of the Lydic's separation agreement, Judge Miller

noted, and was "considerably influenced" by, the fact that cohabitation was then

*illegal* which should have ruled out cohabitation as a future possibility at the time the parties entered their settlement agreement.

> Moreover, I am considerably influenced in my conclusion by the fact that at the time of the separation agreement nonmarital cohabitation was condemned as illegal under a criminal statute then in existence. KRS 436.070 (now repealed). In agreeing to the maintenance provision, Mr. Lydic was not bound to anticipate the engagement of Mrs. Lydic in an illegal act.

*Id.*

In *Lockhart II*, like *Lydic*, there too was the allegation that the ex-wife was "deliberately circumventing the agreement" by choosing to cohabitate instead of remarrying. *Lockhart II*, 566 S.W.3d at 574. Not only that, but the Court of Appeals in *Lockhart II* also found itself in a situation where the husband was facing a 180-day sentence for contempt if he would not pay a lump sum of $25,000, $2,000 per month toward the arrearage, and the $3,000 per month for his ongoing maintenance obligation; all under circumstances where such payments could have been financially *impossible* for him. *Id.* at 573-574.

I believe that it was **only** under this acute convergence of factors: (1) a spouse knowingly, and in bad faith, enjoying substantial financial benefits of a union that had all hallmarks of a marriage except for licensing; and (2) the other spouse being financially unable to pay maintenance and avoid jail, that the Court

of Appeals determined to (potentially) ignore non-modification clause and "remand this matter for additional findings of fact[.]" *Id.* at 576.

In the context of the present situation where: (1) cohabitating is now legal and commonplace; (2) there has not been a remarriage; (3) there is no substantial evidence of a spouse attempting to circumvent the agreement by not remarrying; (4) there is no issue of fact regarding the impossibility of the other spouse being able to pay to avoid contempt; and (5) there exists an enforceable non-modification clause, I believe that the parties' agreement must be enforced without modification in accord with KRS 403.180(6). To hold otherwise could condemn former spouses like Paula to lives of permanent solitude just so they can keep receiving maintenance and afford to live.

I must also point out that here, the circuit court never made an independent analysis as to the propriety *or* amount of maintenance; it had only adopted the parties' settlement agreement pursuant to KRS 403.180. Consequently, there have never been any findings of fact on which the family court, or this Court, could adjudge Paula's prior need for, or right to, maintenance.

Therefore, if a family court is tempted to set aside a non-modifiable maintenance agreement, the first step should be an equitable examination of the original marital settlement agreement, removing the agreed upon maintenance. By this I specifically mean an analysis of whether, at the time of the decree, the

settlement would have been fair to Paula had it *not* contained an award of maintenance.

Since the family court did not make its own findings of fact and award Paula maintenance, we have no means by which to presently appreciate or weigh the parties' original circumstances. At one time the parties both agreed that Paula was entitled to continuing, non-modifiable, maintenance in the amount of $400.00 per month. We simply have no context or basis for that agreement. Based upon the length of her marriage alone, Paula might have been awarded considerably more maintenance by the family court had she not entered the property settlement agreement. Also, we have no way of knowing whether she only accepted future maintenance payments from David in lieu of her full share of marital property interests or restitution of her non-marital interests. Here again we find another reason for courts not to invade the province of the parties' negotiations and contractual agreements

I believe the circuit court must consider each of the factors set forth in KRS 403.200(2), including Paula's financial resources, her age, physical and emotional condition, and the "duration of the [thirty-one year] marriage." Such an analysis is in comportment with *Tudor v. Tudor*, 399 S.W.3d 791, 793 (Ky.App. 2013), which held that for a lower court to determine an unconscionable,

substantial, and continuing change, it must first, "compare the parties' current circumstances to those at the time the court's separation decree was entered."

Therefore, in addition to the majority's admonitions, in order for the Court of Appeals to affirm an order which modifies an otherwise non-modifiable marital settlement agreement, there must *also* be sufficient findings evidencing: (1) a substantive analysis of the specific facts found and relied upon by the circuit court which would warrant setting aside a contract, and (2) a complete analysis and findings of fact regarding the financial resources of the parties at the time they entered the agreement.

Accordingly, I dissent and would vacate the family court's order.

BRIEF FOR APPELLANT:

Donna Dant
Calhoun, Kentucky

BRIEF FOR APPELLEE:

Ryan Bennett Driskill
Greenville, Kentucky