Paul RAYBORN, Appellant,

v.

Exie RAYBORN, Appellee.

No. 2005–SC–0357–DG.

Supreme Court of Kentucky.

Feb. 23, 2006.

Luther C. Conner, Jr., Albany, Counsel for Appellant.

Gary A. Little, Albany, Counsel for Appellee.

ROACH, Justice.

Paul Rayborn appeals from a decision by the Court of Appeals reversing a trial court order terminating his maintenance obligation to his ex-wife, Exie Rayborn. The Court of Appeals held that the trial court's decision to terminate the support obligation was in error because the trial court's conclusion that the parties' circumstances had not changed enough to make the original maintenance obligation unconscionable was not supported by its findings of fact, and, moreover, that the court had applied the wrong legal standard in reaching its decision. Because we agree that there was no change in circumstances sufficient to warrant a modification of the maintenance obligation, we affirm.

Paul and Exie Rayborn were married in 1966. In 1991, Exie filed a petition for dissolution of marriage. Paul did not respond, and the trial court entered a default decree. Under the terms of the decree, Exie received most of the personal marital property, including the parties' mobile home, and Paul was ordered to pay the marital debt, except for the then remaining debt on the mobile home. The parties also owned a one-half interest in a 44–acre farm, where the mobile home was located, but the divorce decree did not dispose of the real estate. When the decree was entered, Paul was 44 years old, and Exie was 47. Paul was a self-employed truck driver, and Exie was disabled. The trial court found that because Exie was disabled, she would be unable to obtain gainful employment. Based on that finding, and the fact that the parties had been married for 25 years, the court awarded Exie permanent maintenance in the amount of $500.00 per month.

After the divorce, Paul purchased the other half interest in the farm from a third party. In 2002, the farm was sold for $336,075. After paying off taxes and the remaining debt, the balance was $208,115.15. Since half the interest in the farm was part of the marital estate, the parties agreed to split the proceeds of the sale, with Exie receiving approximately one quarter of the balance. Her share consisted of $47,000 and the one acre where her mobile home was located, the acre having been repurchased from the farm's buyer with $7500 from the proceeds of the sale. Paul, in turn, received the remaining $153,615.51.

Later that same year, Paul moved the trial court to terminate his maintenance obligation under KRS 403.250. The court

held a hearing where the parties presented evidence in the form of witness testimony and exhibits. Following the hearing, the court entered a ten-page Findings of Fact, Conclusions of Law, and Order that terminated Paul's maintenance obligation on the ground that there had "been a showing of changed circumstances so substantial and continuing as to make the provisions and terms of the 1991 decree respecting maintenance unconscionable."

On appeal, the Court of Appeals noted that the trial court's ruling was based, at least in part, on a finding that the initial decree did not include sufficient findings of fact and that, had sufficient findings been made, the award of maintenance would have been unconscionable when the decree was entered. The Court of Appeals went on to hold that although the trial court purported to have found a change in circumstances sufficient to modify the maintenance award, the finding was merely conclusory and was not supported by the findings of fact. Ultimately, the Court of Appeals reversed, holding: "The circuit court erroneously believed that a maintenance award could be modified if it found that the original award was unconscionable. This is not the standard set forth in KRS 403.250(1)."

We then granted discretionary review. Appellant's motion for discretionary review presented the broad legal question of what legal and evidentiary standards should be applied in determining whether a movant has shown sufficiently changed circumstances to allow modification of a maintenance award under KRS 403.250 when the decree of dissolution creating the modification obligation did not dispose of the entire marital estate and did not include the statutorily required factual findings as to the parties' incomes and the obligated spouse's ability to pay the maintenance. After examining the record, we conclude that we need not address the legal issues in such a broad fashion.

The trial court claimed to have found changed circumstances because of an apparent improvement in Exie's standard of living following the dissolution of her marriage. The full paragraph in the trial court's order on this point reads:

The standard of living established during the marriage was very conservative and modest. The parties' average income from 1988 through 1991 was approximately $9,000.00 from Paul Rayborn's earnings and $4,692.00 from Exie Rayborn's social security benefits. As a result of the additional $6,000.00 per year in maintenance received by Exie Rayborn, and the payment of all of the parties' debts by Paul Rayborn, Exie Rayborn's standard of living was enhanced substantially over what it was during the marriage. Since 1991 Exie Rayborn has continued to live in the mobile home, and Paul Rayborn lived in a barn until the farm was sold.

However, the "changes" noted in the paragraph were actually the product of the divorce decree and its included maintenance obligation and were not the result of a material change in Exie's circumstances after the marriage was ended. These changes alone were cited to support the trial court's claim that "Exie Rayborn's standard of living was enhanced substantially over what it was in the marriage."

▮▮▮ KRS 403.250, the statute that allows for the modification of maintenance awards, states: "[T]he provision of any decree respecting maintenance may be modified *only* upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." KRS 403.250(1) (emphasis added). The statute requires that the changed circumstances occur after the divorce decree and maintenance obligation become effective.

Implicit in this requirement is the understanding that the circumstances of the parties brought about by the entry of the divorce decree and maintenance obligation cannot serve as the basis of the "changed circumstances" required by the statute. Rather, the parties' circumstances at the time of the decree and maintenance obligation are the status quo against which the changed circumstances requirement of KRS 403.250(1) is to be measured. Were we to conclude otherwise, every maintenance obligation could immediately be modified under the statute. That simply is not the purpose of KRS 403.250—it allows a modification only where there has been a change in circumstances *subsequent* to the immediate effects of the divorce decree.

 In addition to the trial court's contention that Exie's standard of living was substantially enhanced after the marriage, Paul Rayborn claims an apparent change in his circumstances, namely, that his income has decreased significantly since the divorce. In evaluating the parties' incomes, the trial court relied on the adjusted gross income (AGI) as listed on the parties' tax returns. Paul's average income from 1989–1991, the years immediately leading up to and including the year of the divorce, was $10,024.66.[1] The trial court noted in its findings that Paul's average annual income from 1998 to 2000 was just $4,517.00. At first glance, this would appear to satisfy the significant change in circumstances requirement, so long as Paul was not intentionally underemployed. Considered alone, however, these figures are quite misleading because they only reflect the AGI. While this can be an appropriate income figure to use in many situations, it is not helpful in this case because Paul's AGI, as calculated in his post-divorce tax returns, reflects a deduction of the full amount of the maintenance payments he made each year to Exie. Thus, the apparent large decrease in income was due to Paul's maintenance obligation and not to any other external factor. Put another way, the decrease in Paul's income was the direct result of the effect of the divorce decree—not some change in circumstances that arose after the maintenance obligation came into effect. In fact, if one adds Paul's maintenance payments to his AGI, it appears that his average income actually *increased* after the divorce, at least in the three years leading up to the trial court's modification of the maintenance obligation. An apparent reduction in a party's income that is the direct result of a deduction from income of the amount of maintenance simply is not a change in circumstances subsequent to the divorce decree. As such, it cannot support a maintenance modification under KRS 403.250.

 The trial court also implied that changed circumstances existed because of the sale of the farm, half of which was part of the marital estate. But the sale of the farm, including the subsequent payment to Exie of her portion of the proceeds, was nothing more than a distribution of property that should have occurred as part of the divorce decree. Indeed, Kentucky law treats marital property not disposed of in the divorce decree as though it had already been distributed. *See Kidwell v. Mason,* 564 S.W.2d 534 (Ky.1978) (holding that even though decree dissolving marriage made no provision for assignment of marital property, decree had same effect

---

1. The trial court discussed a slightly longer pre-divorce period, 1988–1991, noting an average income of $9,034.75. This income figure, however, is for both parties since it includes some income from Exie Rayborn's employment in 1988. None of these figures take into account Exie Rayborn's disability benefits, which, though the record does not disclose, presumably began sometime in 1989.

as if trial judge had specifically written therein that husband and wife each owned an undivided one-half interest in marital property).

Even if this were not the law in Kentucky, the actual distribution of the remaining marital property in this case did not result in the sort of substantial change in the parties' relative financial positions that could render the present maintenance obligation unconscionable. Both Paul and Exie received approximately half of the proceeds of the sale of the portion of the property that was part of the marital estate. That transfer improved the parties' relative financial positions by approximately the same amount. Moreover, because Paul also received proceeds from the sale of the non-marital half of the property, which he sold at a substantial premium, his overall financial position improved significantly relative to Exie's.

In addition to its claim of changed circumstances, the trial court discussed the fact that the initial divorce decree was done incorrectly, and that, as a result, the maintenance obligation was unconscionable when it was created. While it is true that the original decree did not include the requisite findings of fact and did not dispose of the entire marital estate, those failures do not provide an adequate justification for the trial court's decision to revisit the original maintenance order. Those sorts of defects are properly raised only in the context of a direct appeal of the decree; they cannot serve as the basis for a later action to modify the maintenance obligation.

We have repeatedly held that "domestic cases require a greater degree of deference to the determinations made by trial courts." *Marcum v. Marcum,* 779 S.W.2d 209, 212 (Ky.1989); *see also Combs v. Combs,* 787 S.W.2d 260, 262 (Ky.1990) ("As an appellate court, neither the Court of Appeals nor this Court is authorized to substitute its own judgment for that of the trial court on the weight of the evidence, where the trial court's decision is supported by substantial evidence."). But in this case, the evidence simply does not support the trial court's decision. The claimed change in circumstances was merely illusory. There was, in fact, no significant change in the parties' circumstances other than the distribution of the remainder of the marital estate. Thus, we conclude that the decision of the Court of Appeals was correct and that this is one of those rare domestic cases where deference to the trial court's judgment is unwarranted.

For the forgoing reasons, the decision of the Court of Appeals is affirmed and the case is remanded to the Clinton Circuit Court for proceedings consistent with this opinion.

All concur.