Bernard F. BLOCK, Appellant,

v.

Christine A. BLOCK, Appellee.

No. 2005–CA–000666–MR.

Court of Appeals of Kentucky.

May 4, 2007.

Discretionary Review Denied by Supreme Court May 14, 2008.

Vicki L. Buba, Louisville, KY, for appellant.

Marcia L. Sparks, Louisville, KY, for appellee.

Before COMBS, Chief Judge; MOORE, Judge; HENRY,[1] Senior Judge.

1. Senior Judge Michael L. Henry, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

## OPINION

MOORE, JUDGE.

Appellant Bernard F. Block appeals the Jefferson Family Court's denial of his motion to modify spousal maintenance in accordance with KRS 403.250. After a careful review of the record, we vacate the order of the family court and remand.

## I. FACTUAL BACKGROUND

In 1980, Bernard and Appellee Christine A. Block were married. They have one child, who is now an adult. The parties separated in 1998 and later were legally separated in 2000.[2] Both parties received more than $600,000.00 in assets in their Marital Settlement Agreement.[3] The Agreement also provides that Mr. Block would pay Mrs. Block $3,000.00 per month in spousal maintenance until September 2010, when she reaches the age of sixty-three.[4] The Agreement further provides that if Mrs. Block should ever "reside [ ] with a member of the opposite sex not related to her by blood," the court could "entertain a Motion of [Mr. Block] to modi-

fy maintenance as a result of [the] alleged cohabitation, . . . [and in reviewing such motion], the provisions of KRS 403.250 would control." Moreover, the Settlement Agreement provides that maintenance obligations would cease upon Mrs. Block's remarriage.

After the parties separated, Mrs. Block lived in the condominium in Louisville that she received in the Settlement Agreement which was then valued at $129,500.00. Mrs. Block had worked as a business manager for a club in the Bahamas for twenty-one years but quit her job in December of 2002. At that time, Charles Niemann, a male not related by blood, moved into her condominium with her.[5] Mrs. Block has not worked at regular employment since then.[6]

Shortly after they moved in together, Mrs. Block and Mr. Niemann jointly purchased a home for $209,000.00. Because Mrs. Block apparently did not have the required funds readily available, Mr. Niemann advanced her $42,500.00 for a portion of her share of the purchase price.

---

**2.** According to the family court's findings, Mrs. Block had been married before and did not want to be divorced a second time, she did not want to remarry, and she wanted to maintain her right to health insurance.

**3.** Mrs. Block received real estate proceeds of $9,967.00, furniture worth $11,000.00, and other personal property worth $22,500.00 for a total of $43,367.00. She received, debt-free, a 1996 Oldsmobile Silhouette Van worth $13,100.00, a condominium in Louisville worth $129,500.00, and a condominium in Florida worth $144,000.00 for a total of $286,600.00. She also received an IRA worth $18,502.00, $114,497.00 of Mr. Block's 401(k) plan, and a brokerage account worth $140,501.00 for a total of $273,499.00. After Mr. Block's death, Mrs. Block is entitled to $37,830.00 per year for ten years from his SERF and $61,807.00 per year for her life from his pension plan.

**4.** We note that the parties do not provide any arguments under *Dame v. Dame*, 628 S.W.2d

625 (Ky.1982), regarding whether the maintenance at issue is lump sum non-modifiable maintenance. Regardless of this, we conclude that the parties clearly contemplated the possibility of modification under the clear terms of their Settlement Agreement. Thus, we believe *Dame* is distinguishable from the present case.

**5.** Mr. Niemann is a retired federal employee who receives a net amount of approximately $2,100.00 per month from his federal annuity.

**6.** Mrs. Block has applied for two jobs since December 2002, but she did not obtain either one. Mrs. Block then stopped searching for employment because she was transporting her mother to various doctor and physical therapy appointments. Despite her mother's health problems, Mrs. Block admitted to the family court that she took at least six out of town trips in 2003.

They then obtained a mortgage for $61,000.00 for the balance of Mrs. Block's share of the purchase price until she sold her condominium.

Mrs. Block later sold her condominium for $140,500.00 but only received net proceeds of $130,754.97. She repaid Mr. Niemann the money he had advanced her plus $1,000.00 and paid off the mortgage she owed on their home.

Mrs. Block and Mr. Niemann jointly purchased some furniture and a $10,000.00 boat. They purchase their car insurance through Allstate Insurance Company, which allows people who are living together and who are not married or otherwise related to have all vehicles in the household on one insurance policy.

Mrs. Block and Mr. Niemann entered into a written partnership agreement in January of 2003, setting forth the rights and obligations to any property they jointly purchase or acquire. They agreed that any property they purchase together will become the property of the survivor if one of them dies. If they cease cohabiting, they will equally divide their furniture, sell their house and boat, and equally divide the net proceeds. All income earned by either of them remains the separate property of the person who earns it.

Mrs. Block and Mr. Niemann also opened a joint checking account, wherein each of them deposits $1,100.00 monthly for the payment of their joint household expenses. Such joint household expenses include utility bills, property taxes, insurance, yard expenses, and trips that they take together. Food and cleaning products are also included in the joint household expenses. Mrs. Block pays the bills for the household out of the joint checking account. Mrs. Block and Mr. Niemann also have their own separate bank accounts for depositing the remainder of their individual incomes, and any personal expenses are paid out of those individual accounts. Mrs. Block has a credit card that Mr. Niemann is permitted to use. However, Mr. Niemann only charges the shared expenses of the household to that credit card.

Mrs. Block admits that her arrangement with Mr. Niemann is a "financial plan for day-to-day living" similar to that which she and Mr. Block had during their marriage. The agreement is modeled after a prenuptial agreement; it was drafted by Mrs. Block's counsel.

Although Mrs. Block no longer works, she still has earnings. At the time the family court heard evidence, Mrs. Block gambled at least once a week.[7] In 2003, Mrs. Block earned approximately $12,500.00 more from gambling than she lost from that activity.

On March 23, 2003, Mrs. Block and Mr. Niemann engaged in a "commitment ceremony" that was orchestrated by an ordained minister, in which they expressed their intent to remain committed to each other for life. The ceremony was identical to a marriage ceremony, except that words such as "lifelong commitment" were substituted for the word "marriage" throughout the ceremony. The family court determined that the couple intended to establish a lasting relationship that does not include marriage and that they will continue to live together in the foreseeable future.

Based upon Mrs. Block's committed relationship and pursuant to the parties' Settlement Agreement, Mr. Block moved to modify the amount of maintenance that he pays Mrs. Block each month. Specifically,

---

7. Prior to the time that she began caring for her mother, Mrs. Block gambled at least twice a week.

he sought to have his maintenance payments reduced to zero.

The family court heard testimony in the matter and ultimately denied Mr. Block's motion deciding that Mrs. Block only received "some" financial benefit from her relationship with Mr. Niemann. As such, the court determined that this was insufficient to meet the standard set forth in *Combs v. Combs*, 787 S.W.2d 260 (Ky. 1990).

Mr. Block timely filed this appeal, seeking review of the family court's decision.[8] He contends that the amount of maintenance that he pays to Mrs. Block is unconscionable pursuant to KRS 403.250, because Mrs. Block's cohabitation with Mr. Niemann has resulted in a substantial and continuing change in her circumstances.

Mrs. Block moved to dismiss this appeal, or, in the alternative, to strike Mr. Block's brief. Mrs. Block argues that the appeal should be dismissed because the issue on which Mr. Block focuses in his brief, i.e., whether the economic benefit to Mrs. Block is a threshold concern in resolving a motion to reduce maintenance, was not properly preserved for appellate review. Mrs. Block contends that the issue Mr. Block argues in his brief is different from the following issue that he asserted in his prehearing statement on appeal: "K.R.S. § 403.250 provides that maintenance can be revised when there is a change in circumstances, such as cohabitation.... Does [Mrs. Block's] cohabitation amount to a change in circumstances that permits a reduction in maintenance?"

A panel of this Court denied Mrs. Block's motion to dismiss the appeal or to strike Mr. Block's brief, holding that such issues should be addressed on the merits in Mrs. Block's brief, rather than as a separate motion. Mrs. Block now raises those arguments in her brief and contends that the family court did not abuse its discretion when it denied Mr. Block's motion to modify maintenance.

## II. STANDARD OF REVIEW

 We review the family court's determination regarding a motion to modify maintenance for an abuse of discretion. *See Bickel v. Bickel*, 95 S.W.3d 925, 927–28 (Ky.App.2002). We cannot substitute our judgment for the family court's if there is substantial evidence supporting that court's decision. *Id.* at 928. Further, we may not set aside the family court's factual findings unless they are clearly erroneous. *See Wheeler v. Wheeler*, 154 S.W.3d 291, 296 & n. 16 (Ky.App.2004). However, we review questions of law *de novo*. *See Western Ky. Coca–Cola Bottling Co. v. Revenue Cabinet*, 80 S.W.3d 787, 790 (Ky. App.2001).

## III. ANALYSIS

 We note that marriage separation agreements, such as that between the present parties, are enforceable contracts. *See Cole v. Waldrop*, 204 Ky. 703, 265 S.W.

---

8. Mrs. Block timely moved to alter the family court's order to correct some of the dates and phrases mentioned in the court's order. The family court granted in part and denied in part the Mrs. Block's motion to alter the court's initial order. Specifically, the court denied the motion to the extent that it sought to change the date of the parties' separation and granted the remainder of the motion. Before the family court ruled on the motion to alter, Mr. Block filed his first appeal of the court's order. The family court then entered an order amending its prior order, and Mr. Block filed his second appeal from that amended order. This Court then dismissed the first appeal as premature. This Court also dismissed the second appeal as having been improperly taken because Mr. Block's filing of his first notice of appeal divested the family court of jurisdiction to amend its prior order. Both appeals were dismissed.

274, 275 (1924). Because the agreement is a contract, Mr. Block could have bargained for a provision that would have provided for maintenance to terminate automatically upon Mrs. Block's cohabitation.[9] On the other hand, Mrs. Block could have bargained for a provision that cohabitation would not reduce maintenance or that the provision for maintenance was non-modifiable. However, neither party took this precaution to protect his or her interests. Rather, it is evident from their Agreement that the parties contemplated that Mrs. Block's cohabitation may result in modifying maintenance. Just as with any written contract, we assume that this was a bargained-for provision by both sides and is enforceable. We do note that Mrs. Block has a vested right in maintenance payments from the entry of the separation decree and that such payments may only be modified by a court order. *See Combs,* 787 S.W.2d at 263.

The essence of the parties' Agreement relevant to maintenance is that KRS 403.250 and prevailing case law would determine whether Mr. Block "has made a sufficient showing of changed circumstances so substantial and continuing as to make the terms of the parties' maintenance agreement unconscionable." This provision of the Agreement echoes KRS 403.250 which provides, in pertinent part, that "the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable."

The term "unconscionable" is defined as "manifestly unfair or inequitable." *Combs,* 787 S.W.2d at 261. To determine whether the circumstances have changed,

we compare the parties' current circumstances to those at the time the court's separation decree was entered. *See Rayborn v. Rayborn,* 185 S.W.3d 641, 644 (Ky. 2006).

A review of the caselaw illustrates that each case is reviewed separately and on its own facts. In cohabitation cases, most courts, as the family court did, look to the guidance of the Kentucky Supreme Court in *Combs,* 787 S.W.2d 260.

In *Combs,* the Court reviewed a case wherein the ex-husband sought to terminate maintenance obligations due to the ex-wife's cohabitation with another man. The trial court relied on the cohabitation as grounds for changed circumstances under KRS 403.250, as well as the ex-husband's reduced financial resources. The Court of Appeals reversed. Upon discretionary review, the Supreme Court examined previous cases to determine what the relevant considerations should be in a cohabitation case wherein maintenance is being paid by a former spouse.

In its review, the Court in *Combs* analyzed *Williams v. Williams,* 554 S.W.2d 880 (Ky.App.1977). In *Williams* the Court determined that continued maintenance payments were unconscionable where the ex-wife was cohabiting, the ex-husband's financial resources had diminished, and the nature of the ex-wife's cohabitation was a "new financial resource." *Combs,* 787 S.W.2d at 261.

The Court in *Combs* also analyzed *Lydic v. Lydic,* 664 S.W.2d 941 (Ky.App.1984), wherein the Court concluded that "the ex-wife's cohabitation did not constitute a de facto remarriage justifying automatic termination of maintenance under K.R.S.

---

9. In other cases, parties have specifically bargained for provisions in their settlement agreements governing automatic termination of maintenance obligations in the event of cohabitation. *See e.g., Bennett v. Bennett,* 133

S.W.3d 487 (Ky.App.2004); *Cook v. Cook,* 798 S.W.2d 955 (Ky.1990). Although Mr. Block relies on *Bennett* and *Cook,* both cases are highly distinguishable on this basis and are inapposite to the matter at hand.

§ 403.250." *Combs,* 787 S.W.2d at 261. The *Combs* Court did note that in *Lydic,* the Court suggested that its decision might be different if the cohabiting spouse had formed a "lasting relationship." *Id.* We are not offered many of the underlying facts in *Lydic,* only that the cohabitation was a "roommate situation" with each individual paying his or her own way.

With all due respect to the Supreme Court's decision in *Combs,* in its consideration of *Lydic* the Court overlooked a very important fact in its analysis: absent death or remarriage, the parties' agreement governing maintenance provided that maintenance "shall not be reviewable by a court of law, and is absolutely final." *Lydic,* 664 S.W.2d at 942. Accordingly, the parties bargained for a provision regarding maintenance that would not terminate short of death or remarriage. The *Lydic* Court found this provision of importance, noting that the ex-husband had signed the agreement "willingly and apparently against the advice of his own attorney." *Id.* at 943.

■ Upon a review of more recent caselaw, we are even more persuaded that the Supreme Court was correct in its statement in *Combs* that "each case stands on its own." *Combs,* 787 S.W.2d at 262. Nonetheless, one principle is exceedingly clear from the caselaw: absent a provision otherwise in a separation agreement, cohabitation is only one factor to consider in reviewing modification of maintenance cases.[10] But, depending on the nature of the cohabitation, continued maintenance may indeed be unconscionable.

While holding that "each case must stand on its own," the Supreme Court in

*Combs* set forth factors that should be considered in cohabitation cases: (1) the duration of the new relationship ˙and cohabitation, including proof of some permanency or long-term relationship; (2) the economic benefit that the cohabiting spouse receives as a result of the cohabitation; if the cohabitation does not change the cohabiting spouse's economic position, then reductions should not be permitted; (3) the cohabiting parties' intentions, including whether it appears that the cohabiting spouse is avoiding re-marriage to keep maintenance and whether the cohabiting parties intend to establish a lasting relationship; (4) the "nature of the living arrangements," i.e., whether the cohabiting parties share one common household, or whether the living arrangements appear to be for the purpose of "space sharing"; (5) the "nature of the financial arrangements," i.e., whether the cohabiting parties' assets have been pooled or is there a joint or team effort in the living arrangement; and (6) the likelihood that the cohabiting parties' relationship will continue indefinitely. *Id.* at 262 (capitalization changed). The Supreme Court held that "a maintenance recipient's cohabitation can render continued maintenance 'unconscionable' if the nature of the cohabitation constitutes a new 'financial resource' as contemplated in K.R.S. § 403.200(2)(a)." *Id.*

The family court referenced the factors set forth in the *Combs* opinion but focused primarily on the economic benefit factor. We believe that the holding in *Combs* is that each of the factors should be considered, but that *Combs* requires that the cohabitation must result in a change in the cohabiting spouse's economic position be-

---

**10.** The Supreme Court has opined that "[i]f the legislature wants to make a policy decision to automatically terminate maintenance upon a recipient's cohabitation, then it should amend KRS 403.250(2) to add cohabitation as a grounds for automatic termination." *Combs,* 787 S.W.2d at 263. Likewise, in *Lyd-* *ic,* the Court held that the plain language in KRS 403.250 does not include cohabitation as an automatic ground for termination of maintenance, and the Court cannot redraft the clear language of the statute. *Lydic,* 664 S.W.2d at 943 (citing *Clark v. Clark,* 601 S.W.2d 614 (Ky.App.1980)).

fore a modification of maintenance is in order.[11] Other than the economic benefit factor, Mrs. Block does not argue that the other factors weigh in her favor. Rather, the record demonstrates that these factors *overwhelmingly weigh* in favor of Mr. Block.

As to the economic benefit factor, the family court concluded that Mrs. Block was receiving "*some* economic benefit by sharing the common expenses of the household with Mr. Niemann" but not a " 'substantial economic benefit.' " (Emphasis in original). This is the crux of the parties' argument—whether the economic benefit factor weighs in favor of Mr. Block or Mrs. Block. And, if it weighs in favor of Mrs. Block, does it outweigh the remaining factors that are overwhelmingly in Mr. Block's favor?

We find it significant that the parties bargained for a provision in their Settlement Agreement that the issue of maintenance may be reviewed *if* Mrs. Block cohabits with a non-relative male. Accordingly, Mrs. Block went into the Agreement with her eyes wide open that future cohabitation might alter the parties' maintenance agreement.

Applying the law to the facts of this case, the family court found *some* economic benefit to Mrs. Block from cohabiting with Mr. Niemann but not a *substantial* economic benefit, despite a finding that Mrs. Block's living expenses and expenses for entertainment and travel have increased since her separation from Mr. Block while her earnings have decreased. Nonetheless, Mrs. Block claims that her expenses have not been reduced as a result of her living arrangement with Mr. Niemann "because her property taxes had

increased and she had doubled her contributions to church and charity." From the record, it is evident that Mrs. Block's increases in her living expenses are based on her discretionary spending. The family court clearly rejected Mrs. Block's arguments that she was not economically benefiting from her living arrangement with Mr. Niemann but, nonetheless, found that that was not substantial enough to warrant a modification in maintenance.

We are well aware of the high deference due a family court's conclusions, particularly in light of the matter at hand where the family court was diligent and held a four-hour evidentiary hearing in the case. Nonetheless, we cannot say on what evidentiary basis the family court concluded that Mrs. Block was enjoying only "*some* economic benefit" from her living arrangement with Mr. Niemann. At the very least, the evidentiary record includes nearly $400 per month in savings to Mrs. Block due to her living arrangement with Mr. Niemann. Further, Mrs. Block has full use of a $10,000.00 boat for which her investment is only $5,000.00 and a $209,000.00 home with an investment of only $104,500.00. Her cost for housing has decreased significantly from $129,000.00 to $104,500.00, and she no longer owes mortgage payments.

Based on the foregoing, there can be no doubt that Mrs. Blocks's relationship with Mr. Niemann constitutes a new " 'financial resource' " for her. *Combs*, 787 S.W.2d at 262 (quoting KRS 403.200(2)(a)). When this fact is combined with the other factors outlined in *Combs*, which weigh *overwhelmingly* in favor of Mr. Block, we conclude that this is the rare case, despite the diligent work of the family court, that it

---

11. It is worthy to note that in KRS 403.250, the legislature do not incorporate the requirement of a financial benefit but rather only "changed circumstances so substantial and continuing as to make the terms unconsciona-

ble." Nonetheless, this Court is bound by the Supreme Court's decision in *Combs* that KRS 403.200(2)(a)'s "financial resource" is part of the consideration under KRS 403.250 in a modification case.

abused its discretion in concluding that the requirements of KRS 403.250 are not met warranting a modification of maintenance.

Moreover, pursuant to KRS 403.250, based on facts surrounding Mrs. Block's cohabitation, Mr. Block has set forth a textbook example of a "showing of changed circumstances so substantial and continuing as to make the terms [of maintenance] unconscionable." We could not agree more with the Supreme Court's adoption in *Combs* of Judge Miller's wise reasoning from his dissenting opinion in *Lydic*, wherein he stated that

> [t]here is something distasteful in requiring one to subsidize a former spouse, in his or her subsequent cohabitation . . . . . . it is insignificant whether the rule terminating maintenance be grounded upon moral circumstances, upon the practical consideration that remarriage or non-marital cohabitation removes the necessity of support or upon some neutral principle of law . . . [.]

*Combs*, 787 S.W.2d at 262 (quoting *Lydic*, 664 S.W.2d at 943 (Miller, J., dissenting)).

Accordingly, Mr. Block's having satisfied the factors in *Combs* to his favor and having clearly met the requirements in KRS 403.250, for modification, we reverse the family court and determine that Mr. Block's maintenance obligation to Mrs. Block should be reduced to zero. We stress, as the Court did in *Combs*, that "each case stands on its own," and that "[w]e do not intend by this opinion to open the floodgates to motions to terminate or suspend maintenance payments in every situation in which the maintenance recipient has begun" cohabiting with a member of the opposite sex who is a non-relative. *Combs*, 787 S.W.2d at 262.

We pause to point out that, contrary to Mr. Block's argument, we do not consider Mrs. Block and Mr. Niemann to be "married" simply because they live together. Kentucky courts have routinely rejected this argument. *See Lydic*, 664 S.W.2d at 942.

We finally address Mrs. Block's assertion that the issue Mr. Block argued in his brief, i.e., whether the economic benefit to Mrs. Block is a threshold concern in resolving a motion to reduce maintenance, was not properly preserved for appellate review. Mr. Block's prehearing statement provides that the issue on appeal is whether Mrs. Block's cohabitation amounts to a change in circumstances that permits a reduction in maintenance. Because Mr. Block's prehearing statement follows the language of KRS 403.250 concerning a modification of maintenance and the issue he asserts in his brief concerns one of the factors to be considered in analyzing a motion to modify maintenance under KRS 403.250, his prehearing statement properly preserved this issue for appeal. Clearly, this was an issue reviewed by the family court. Thus, Mrs. Block's arguments for dismissing the appeal and/or for striking Mr. Block's brief lack merit.

Based on the reasons so stated, the order of the Jefferson Family Court is hereby vacated, and this case is remanded for proceedings not inconsistent with this Opinion.

ALL CONCUR.