RENDERED:  FEBRUARY 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0342-MR

KRISTIE AKAGI-JOHNSON                                        APPELLANT

v.

APPEAL FROM MCCRACKEN FAMILY COURT
HONORABLE DEANNA WISE HENSCHEL, JUDGE
ACTION NO. 18-CI-01077

JAMES JOHNSON                                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND MAZE, JUDGES.

CETRULO, JUDGE:  Appellant Kristie Akagi-Johnson ("Wife") appeals the

modification of maintenance order and order for rule ("Order") that the McCracken

Family Court entered on November 6, 2020.  The Order decreased Appellee James

Johnson's ("Husband") monthly maintenance payment amounts and stated that no additional personal property need be given to Wife.[1]

## FACTS AND PROCEDURAL BACKGROUND

Wife and Husband divorced on September 20, 2019. As part of the proceedings, they entered into a marital settlement agreement (the "Agreement"), which, in pertinent part, outlined the maintenance schedule. Therein, the parties agreed to a maintenance structure that required Husband to pay Wife a total of $69,324. Husband was to pay the total amount by making payments of $1,832 per month for 18 months, followed by $932 per month for 39 months. Further, in the Agreement, Husband agreed to not seek modification of the maintenance award or amount based on Wife's cohabitation or remarriage.

At the time the parties entered the Agreement, Husband earned a salary of $210,000 as a regional manager for Worley Field Service ("Worley"). A few months after the divorce, in early April of 2020, Husband lost that job because the COVID-19 pandemic caused a downturn in Worley's work. Husband testified that immediately after his employer informed him of his impending termination, he called Wife to express his concern about his ability to continue to make the maintenance payments. Husband further testified that he immediately began

---

[1] Wife appeals only the modification of maintenance, not the family court's unwillingness to redistribute property.

applying to "any and all" jobs he could find.  At the hearing, Husband provided copies of the 500+ job applications he had submitted in his search.  A little over a week after his last day at Worley, on April 20, 2020, Husband secured his first temporary position, which he testified resulted in a 40-45% pay cut.  Due to his reduced income, Husband filed his motion to terminate or modify maintenance in June of 2020.  Shortly thereafter, in August of 2020, Husband secured a new, permanent position with a $150,000 salary.  Husband testified that to accept this new position, which was the highest paying position he was offered, he had to move to a new state and buy a new home.

The family court held a hearing on the motion to modify or terminate maintenance in September of 2020.  Both Wife and Husband testified as to their financial status at that time.  During the hearing, Husband testified that when he lost his job at Worley and began working jobs with lower pay, his standard of living took a substantial downturn.  He further testified that he had to cash out his retirement to assist with his expenses, and, although he found a new job, it was a substantial pay cut with no foreseeable opportunity for a raise.  Therefore, he claimed he no longer had the same cash flow as when he executed the Agreement, and his financial status had substantially changed.

At the hearing, Wife testified that she entered into the Agreement based on Husband's promise to pay her the set maintenance amounts.  She further

explained that she entered into the Agreement largely because the amount of maintenance made up for the fact that she would have to leave their marital residence, move to a new state, and continue to pay for a marital car. Because of those changes, she claimed that she fought for the set amount of maintenance ($69,324 total). However, she also testified that if the family court reduced the maintenance award, she would need at least $1,000 a month to make ends meet.

Following the hearing, the family court determined that Husband had made diligent efforts to secure a new job immediately upon losing the last, and that there had been a substantial decrease in his salary. Further, the family court found that the maintenance award should be decreased by 30% because the Husband's salary decreased by 30%, according to the court's calculations. Specifically, the modified maintenance award required Husband to pay Wife $1,282 from June 1, 2020 until March 1, 2021, and then in March 2021, start paying her $652 per month for the following 39 months. The court explained that such parallel decrease was a fair and reasonable way to accommodate both parties' ongoing needs.

Wife appealed the Order on the maintenance determination, arguing the family court erred in modifying Husband's obligation.

## STANDARD OF REVIEW

"We review the family court's determination regarding a motion to modify maintenance for an abuse of discretion." *Block v. Block*, 252 S.W.3d 156, 159 (Ky. App. 2007) (citing *Bickel v. Bickel*, 95 S.W.3d 925, 927-28 (Ky. App. 2002)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Holland v. Herzfeld*, 610 S.W.3d 360, 363 (Ky. App. 2020) (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). "We cannot substitute our judgment for the family court's if there is substantial evidence supporting that court's decision." *Block*, 252 S.W.3d at 159 (quoting *Bickel*, 95 S.W.3d at 928).

## ANALYSIS

First, Wife claims Husband's change in circumstance does not make the maintenance award unconscionable, as KRS[2] 403.250(1) requires. Second, she argues that even if the family court was correct to modify Husband's monthly payments, it should have increased the duration of the maintenance period to make the total amount equal $69,324.

Kentucky courts may modify maintenance awards when the parties' circumstances change in such a way that the original award becomes

---

[2] Kentucky Revised Statute.

unconscionable. KRS 403.250(1) ("Except as otherwise provided in [KRS 403.180(6)[3]] the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable."). In *Tudor*, this Court explained that "[m]aintenance becomes unconscionable if it is 'manifestly unfair or inequitable.'" *Tudor v. Tudor*, 399 S.W.3d 791, 793 (Ky. App. 2013) (quoting *Combs v. Combs*, 787 S.W.2d 260, 261 (Ky. 1990)). "To determine whether the circumstances have changed" enough to become unconscionable, "we compare the parties' current circumstances to those at the time the court's separation decree was entered." *Id*. (quoting *Block*, 252 S.W.3d at 160).

Wife first argues that the original maintenance award was not unconscionable because, she claims, Husband's new debts do not constitute a change in circumstances. Wife contends that Husband's actions (not his 30% salary decrease) were the main cause of his change in circumstance because he purchased a truck and, when he relocated for his new job, purchased a house. However, these claims fall flat. The record clearly shows that after Husband bought the truck, in November 2019, he still made the full maintenance payments to Wife every month. It was not until five months after he bought his truck, when

---

[3] KRS 403.180(6) states ". . . the decree may expressly preclude or limit modification of terms if the separation agreement so provides. Otherwise, terms of a separation agreement are automatically modified by modification of the decree."

he lost his job in April of 2020, that he no longer made full payments to Wife and sought maintenance modification. Although the purchase price of the new house is higher than his previous house, the monthly payment for the new house is lower, so we cannot conclude that such a change resulted in his overall downturn in cash flow. After analyzing the parties' income and expenses, the family court concluded that the decrease in salary was a substantial and continuing circumstance that warranted modification of the maintenance award. We agree.

As the family court correctly synthesized, at the time of the decree, when Husband entered the Agreement, he was making $210,000 a year. When Husband submitted his motion to modify maintenance, he had lost that job due to COVID-19 and secured a new job earning $150,000 a year, a 30% income loss. Citing to the Husband's testimony that he applied to over 500 jobs immediately upon hearing of his upcoming termination, the family court found that the husband made diligent attempts to secure employment. The family court conducted a two-hour hearing, considered the parties' income and expenses, and then concluded that the 30% decrease in salary was "substantial and continuing" so as to make the maintenance award unconscionable under KRS 403.250(1). Therefore, the family court determined that the maintenance award warranted modification and decided that a 30% decrease was a fair and reasonable way to accommodate both parties' ongoing needs. The family court's finding adheres to Kentucky precedent.

As this Court found in *Mudd*, a substantial reduction in income may warrant a modification in maintenance. *Mudd v. Mudd*, 903 S.W.2d 533, 534 (Ky. App. 1995). There, the husband alleged that his income decreased approximately $160,000 (allegedly due in part to some questionable investments) and the trial court reduced the husband's maintenance payments by $15,000 per year. *Id.* Both the husband and wife appealed the decision. *Id.* This Court held that, "based upon the current needs of the parties and the economic conditions and circumstances of the parties, we cannot say that it was an abuse of the trial court's discretion to only reduce [the husband's] maintenance payments[.]" *Id.* Similarly, here, the family court based its determination on the current needs of the parties and the financial status of each. Although the alleged decrease in salary was greater in *Mudd*, the family court here still determined Husband's reduction was a "substantial decrease."[4] Therefore, we cannot say that it was an abuse of the family court's discretion to reduce the maintenance payments based upon its determination of a substantial decrease. *Id*.

Second, Wife argues that even if the reduced monthly maintenance payments were proper, the family court should have extended the maintenance

---

[4] Husband cites to an unpublished case in which the husband's salary was decreased by approximately 40% and the family court decreased the maintenance by 40%. This Court found that the circuit court did not abuse its discretion in such determination. *List v. List*, No. 2018-CA-000068-MR, 2019 WL 1503959, at *1-2 (Ky. App. Apr. 5, 2019).

duration to reach the $69,324 total specified in the Agreement.[5]  However, that is not what Kentucky case law dictates.  Instead, the Kentucky Supreme Court has stated that any maintenance award, even lump sum awards (which Wife does not argue this is), may be modified.  *Woodson v. Woodson*, 338 S.W.3d 261, 263 (Ky. 2011) ("In giving [KRS 403.250(1)] its obvious meaning, all decrees 'respecting maintenance' are modifiable under certain circumstances.").[6]  The court's authority to modify maintenance, however, is not absolute.  This Court has held that maintenance awards may not be modified when a marital settlement agreement expressly precludes it.  *Jaburg v. Jaburg*, 558 S.W.3d 11, 13 (Ky. App. 2018) ("KRS 403.250(1) prohibits a court from invoking this limited authority [to modify maintenance awards] when the parties have a separation agreement pursuant to KRS 403.180(6) that expressly precluded subsequent modification of the terms of their separation agreement.").[7]

---

[5] The new maintenance structure the family court ordered totals $53,454 that Husband must pay to Wife.

[6] "The burden of proof to change maintenance orders is sufficiently strict to insure [sic] relative stability and finality. . . . However, [KRS 403.250(1)] *does not divest trial judges of the discretion to decide* when modification outweighs the virtue of finality *in seeking fairness and equity* in what many times may be dire consequences and complicated options."  *Woodson*, 338 S.W.3d at 263 (emphasis added).

[7] In *Jaburg*, this Court conducted a statutory analysis to determine whether KRS 403.250(1) permitted the family court to modify a settlement agreement.  We therefore utilized *de novo* review.  Here, we are not interpreting the statute, and instead we are merely looking at whether the family court's maintenance modification was supported by law.  *De novo* review is not required here.

In *Jaburg*, the settlement agreement contained explicit "non-modification clauses" which stated, "the parties agree this amount [of $2,700 per month] is non-modifiable." *Id.* Here, importantly, the Wife and Husband's Agreement contains no such language. It states only that Husband agreed "to not seek modification of th[e] maintenance award or amount based on co[]habitation or remarriage by [Wife]." Because his motion to seek modification was based on his salary decrease, the Agreement did not preclude the family court from modifying the maintenance amount. Therefore, the family court did not abuse its discretion when it subsequently modified the maintenance award.

The family court stated that its decision to reduce maintenance by 30% was based on the parties' income and expenses and, therefore, was a fair and reasonable way to accommodate both parties' needs. The family court had the authority under Kentucky case law to modify the maintenance award in such a manner. *Jaburg*, 558 S.W.3d at 13; *see also Woodson*, 338 S.W.3d at 263. We find that the family court's decision was not arbitrary and was supported by sound legal principles. *Holland*, 610 S.W.3d at 363. Therefore, the family court did not abuse its discretion.

## CONCLUSION

For the foregoing reasons, we AFFIRM the McCracken Family Court Order.

-10-

ALL CONCUR.


BRIEF FOR APPELLANT:          BRIEF FOR APPELLEE:

Heather L. Jones             Warner T. Wheat
Paducah, Kentucky            Paducah, Kentucky