RENDERED: OCTOBER 4, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0994-MR

DAVID ALLEN GALLAGHER                                    APPELLANT

APPEAL FROM BATH CIRCUIT COURT
v.       HONORABLE WILLIAM EVANS LANE, JUDGE
ACTION NO. 17-CI-00070

ROSEMARY GALLAGHER                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND KAREM, JUDGES.

KAREM, JUDGE:  David Allen Gallagher appeals from the Bath Circuit Court's

denial of his motion to terminate maintenance payments to his former wife,

Rosemary Gallagher.  Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Gallaghers were divorced on January 25, 2021. David filed an appeal from the final judgment, challenging the court's rulings on custody and timesharing, the division of marital property, and the award of maintenance to Rosemary. The following pertinent facts are taken from this Court's opinion in that first appeal:

> The parties [David and Rosemary] were married in November 1990, separated in April 2017, and the decree of dissolution of marriage was entered on January 25, 2021. The parties have one child, C.C.G. ("Child"), who was born in 2007. David worked for Pike Electric as a lineman, earning $42.00 per hour and earned a total of $92,605.00 in 2017. Rosemary was unemployed at the time of dissolution.

*Gallagher v. Gallagher*, No. 2021-CA-0260-MR, 2022 WL 414107, at *1 (Ky. App. Feb. 11, 2022).

Under the terms of the judgment, "Rosemary was awarded maintenance of $840.00 per month for five years due to the length of marriage, income disparity between the parties, Rosemary's current medical needs, and time for Rosemary to be retrained and build a career in the job market." *Id*. at *2. She was also awarded some property on Ramey Road,

> which included the marital residence and a rental house. Rosemary testified that she receives $500.00 per month from the rental property – $350.00 in cash and $150.00 in services from tenant. Rosemary's property also has

-2-

fifteen storage units, three of which she uses for herself and another twelve which are rented.

*Id.* at *4. This rental income covered the mortgage on the Ramey Road property. *Id.* at *6.

To support its award of maintenance of $840 per month for five years, the trial court found that,

> Rosemary had CNA [Certified Nursing Assistant] training, but that was over thirty years earlier and she never worked in that field. The court further found that Rosemary had not worked consistently through the marriage and when she did work, it was often through a temporary service. Moreover, the court noted that Rosemary has a cancerous growth on one leg and a similar growth needing medical attention. She is unable to work a job that requires her to be on her feet for an extended time until her leg is treated. Thus, the court awarded maintenance to allow Rosemary to get her medical issues addressed and to build a career in the job market.

*Id.* at *5. This Court further noted that "the record clearly shows that the parties enjoyed a comfortable, although not extravagant, lifestyle during their marriage of approximately 30 years. David does not contend that Rosemary's claimed expenses are unreasonable or reflect a standard of living beyond that which the parties enjoyed during the marriage." *Id.* at *6.

In his first appeal, David argued that the trial court erred in awarding maintenance, asserting that Rosemary could receive more income from the rental

property and storage units and that she was capable of working and earning additional income. This Court affirmed the award of maintenance, stating:

> This amount is sufficient to meet her current expenses in excess of her income from the rental property, but little else. Rosemary also testified that she will also need to obtain health insurance on her own, at a cost of $504.77 per month with annual deductible of $6,700. Obviously, that expense, as well as any additional expenses, will have to be paid from the marital property awarded to her. Under the circumstances, we conclude that the trial court's findings regarding maintenance are not clearly erroneous, and that the amount and duration of maintenance awarded to Rosemary was not an abuse of discretion.

*Id.*

It is undisputed that David made no maintenance payments whatsoever to Rosemary after the entry of the final judgment nor during the pendency of the first appeal. The Opinion of this Court became final on August 16, 2022. On November 10, 2022, Rosemary moved the circuit court to enter an order compelling David to pay maintenance in conformity with the appellate decision. Six days later, David filed an appeal seeking to terminate his maintenance obligation because Rosemary had cohabitated with another man in a romantic relationship for several months. David continued to refuse to pay maintenance.

A hearing on the motion to terminate was held on February 22, 2023. Rosemary testified that she asked Jackie Richmond, an old family friend she had

known since she was thirteen years of age, to move in with her to help pay the bills because she was not receiving maintenance and her financial situation was difficult. Rosemary previously worked at Dollar General from November 2019 to May 2020 but stopped because her legs would not let her continue. She did not have any income besides the rental income which covers her house payment. The bank had filed a judgment against her, and she also had outstanding medical bills from Dermatology Associates, which David was supposed to pay under the terms of the dissolution decree. Because he failed to do so, Rosemary testified she was unable to get treatment for a cancerous growth that had returned to her leg.

Jackie moved into her home in the second week of June 2022. He had a key to the house, paid her $100 per week in cash, and occasionally bought groceries and household items. Child testified that Jackie slept in his mother's bedroom, kept his clothes in her closet, and sometimes prepared breakfast which they ate together. According to Rosemary, she and Jackie were not planning to get married, but were good friends "with benefits." Rosemary did not have access to Jackie's bank accounts or his credit cards, nor did Rosemary and Jackie have any joint accounts or joint credit cards. Jackie never took over the payment of any of the household utilities.

Jackie moved out in early December 2022 after the motion to compel and the motion to terminate maintenance were filed because he did not want to get

involved in the conflict between David and Rosemary. About a week before the hearing, David purchased two money orders, in the amounts of $400 and $200, which he had Child give to Rosemary as payment of maintenance.

David testified that he did not pay any maintenance because in the dissolution proceedings, Rosemary had testified that the condition of her leg prevented her from working. He nonetheless saw her working at the Dollar General store and videotaped her with his phone. He refused to pay maintenance because "she got everything her way by lying under oath."

The trial court entered findings of fact and an order denying the motion to terminate maintenance. The court found that Rosemary did have a friend with benefits who stayed with her and paid her $100 per week. It found that David was ordered to pay the sum of $840 per month in maintenance but had never done so, except for two payments totaling $600 which he made before the hearing. The court noted Rosemary's testimony that if she had been receiving maintenance from David as ordered, she would not have asked her friend to stay at her home and contribute to the household; it also noted David's testimony that he did not pay maintenance as ordered because Rosemary did not deserve it. It concluded that Rosemary was not cohabitating with another person such that her economic circumstances had changed from the time of the maintenance order and that this person was no longer cohabitating with her or contributing to the household

expenses. It stated that but for David's willful failure to pay maintenance as ordered, Rosemary would not have taken in a paying roommate.

This appeal by David followed.

## STANDARD OF REVIEW

> We review the family court's determination regarding a motion to modify maintenance for an abuse of discretion. We cannot substitute our judgment for the family court's if there is substantial evidence supporting that court's decision. Further, we may not set aside the family court's factual findings unless they are clearly erroneous. However, we review questions of law *de novo*.

*Block v. Block*, 252 S.W.3d 156, 159 (Ky. App. 2007) (citations omitted).

## ANALYSIS

Under Kentucky Revised Statutes (KRS) 403.250(1), "the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." For purposes of KRS 403.250(1), "unconscionable" is defined to mean "manifestly unfair or inequitable." *Combs v. Combs*, 787 S.W.2d 260, 261 (Ky. 1990) (quoting *Wilhoit v. Wilhoit*, 506 S.W.2d 511 (Ky. 1974)).

"[A] maintenance recipient's cohabitation can render continued maintenance 'unconscionable' if the nature of the cohabitation constitutes a new 'financial resource' as contemplated in KRS 403.200(2)(a)." *Id.* at 262. In *Combs*, the Kentucky Supreme Court cautioned "that not every instance of cohabitation

-7-

constitutes a change in circumstances making continued maintenance

'unconscionable.'" *Id.* Rather, the trial court must evaluate the relationship

considering the following elements:

> 1. Duration – It should never be the intention of the Court to allow for maintenance reduction based upon casual "overnights" or dating. A showing of substantially changed circumstances under KRS 403.250(1) based upon cohabitation, necessarily involves proof of some permanency or long-term relationship.
>
> 2. Economic Benefit – The relationship must be such to place the cohabitating spouse in a position which avails that spouse of a substantial economic benefit. The scope and extent of the economic benefit should be closely scrutinized. If the "cohabitation" does not change the cohabitating spouse's economic position, then reductions should not be permitted.
>
> 3. Intent of the Parties – Does it appear that the cohabitating spouse is avoiding re-marriage to keep maintenance? Does it appear from the circumstances that the cohabitating parties intend to establish a "lasting relationship?"
>
> 4. Nature of the Living Arrangements – Does it appear that the cohabitation is merely a space sharing situation or is there one common household?
>
> 5. Nature of the Financial Arrangements – Is there a "pooling of assets?" Is there actually a joint or team effort in the living arrangement? Who pays the bills and how are they paid?
>
> 6. Likelihood of a Continued Relationship – Does it appear that the relationship will continue in the future? Do the parties intend the relationship to continue indefinitely?

*Id.*

David argues that the trial court failed to make findings under the *Combs* elements and instead based its decision solely on the fact that David had not paid maintenance.

As stated above, KRS 403.250(1) permits a maintenance award to be modified only upon a finding of "changed circumstances" that are "substantial and continuing." But the "changed circumstances" in this case were not due to Rosemary's cohabitation with Jackie; rather, they were due to David's persistent refusal to pay his maintenance obligation. David created the situation that compelled Rosemary to seek an additional source of income. As she testified, she initially worked at Dollar General but was unable to continue for more than a few months due to her leg condition – which was one of the reasons she was awarded maintenance in the first place. Because she was physically incapable of performing this employment, she turned to Jackie to help supplement her income. As the trial court found, if she had been receiving maintenance from David, she would not have asked Jackie to stay at her home and contribute to the household. It would be grossly inequitable to allow David to terminate his maintenance obligation when he is responsible for creating the situation that led Rosemary and Jackie to cohabitate temporarily.

Although the trial court did not make an express reference to *Combs*, its findings addressed several of the *Combs* elements. Under the first element, duration, the trial court found that Rosemary did have a friend stay at her home for a short time, but this friend was no longer living there because he did not want to be involved with David. Under the second element, economic benefit, *Combs* specifies that maintenance cannot be reduced if the cohabitation does not provide a "substantial economic benefit" that changes the cohabitating spouse's economic position. The trial court found that Jackie paid Rosemary $100 per week while he was staying with her to assist with her bills. An additional $100 per week does not rise to the level of a substantial economic benefit, especially in light of the fact that David was withholding $840 per month, or over $200 per week, in maintenance. Under the third element, intent of the parties, the trial court found that but for David's willful failure to pay maintenance as ordered, Rosemary would not have had to take in a paying roommate. There were no findings under the fourth element, the nature of the living arrangements. Under the fifth factor, the nature of the financial arrangements, the trial court did not make an express finding, but Rosemary's uncontradicted testimony was that she and Jackie did not have joint bank accounts or credit cards, nor did Jackie directly take over the payment of any bills. Finally, under the sixth element, likelihood of a continued relationship, the trial court found that Jackie would not have moved in with Rosemary if David had

-10-

not failed to pay maintenance and that he moved out to avoid involvement with David.

The trial court's findings directly address the *Combs* elements and are fully supported by substantial evidence in the record. Its denial of David's motion to terminate maintenance was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the order denying David's motion to terminate maintenance is affirmed.


ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Michael J. Curtis                       Julie S. Williamson
Ashland, Kentucky                       Owingsville, Kentucky