RENDERED: OCTOBER 25, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0942-MR

BLAINE VAN GANSBEKE            APPELLANT

v.        APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 12-CI-500563

BRIDGET F. VAN GANSBEKE            APPELLEE

OPINION
VACATING AND REMANDING

\*\* \*\* \*\* \*\* \*\*

BEFORE: ACREE, EASTON, AND GOODWINE, JUDGES.

ACREE, JUDGE: Appellant, Blaine Van Gansbeke, appeals the Jefferson Family Court's June 29, 2023 Order based, in part, on the report and testimony of a court-appointed friend of the court. Because the family court violated Blaine's statutory right to a meaningful opportunity to challenge the friend of the court's sources and report, we vacate the order and remand for a new hearing.

## BACKGROUND

Blaine and Bridget Van Gansbeke were married on February 8, 2003. They are the parents of twin daughters, S.V.G. and M.V.G., who were born in 2010. Bridget filed for divorce in the Jefferson Family Court in February 2012. The court entered its decree of dissolution adopting the parties' marital settlement agreement in September 2013. By that agreement, the parties shared joint custody of the twins, with Bridget as the primary residential custodian. The parties did not agree to equal parenting time. The children were to reside primarily with Bridget.

The parties' post-divorce relationship remained contentious. Both allege the other failed to abide by the conditions of their agreement or with family court orders. At one point, Blaine was granted an expansion of his parenting time but, in 2019, Bridget moved to reduce it. This led to the parties' participation in a custodial evaluation with Drs. Marvin and McCrary. Both doctors created oral settlement conference notes detailing their impressions.

Once the evaluation was completed, on August 19, 2020, the family court entered an agreed order granting Bridget sole authority to make parenting decisions and reducing Blaine's parenting time to four overnights each month. Blaine and the twins would engage in therapy proposed by the children's therapist, Dr. Hammon. The agreed order also required the parties to support and accommodate the children's academic, extracurricular, and religious activities.

In January 2022, after one-and-a-half years operating under the agreed order, Blaine moved the family court to again order the parties to mediation regarding the parenting schedule and to revisit Bridget's status as sole decision maker. The family court granted the motion, but also appointed James K. Murphy to serve as Friend of the Court (FOC) to investigate and make a report.

Much occurred over the next several months, but agreement was not reached on every issue. In October 2022, the family court entered a pre-trial order scheduling a one-half-day hearing for March 31, 2023. The order required the parties to file and serve their respective witness and exhibit lists at least fourteen (14) days before the hearing. The sequence of events that followed is significant.

On March 3, Blaine's counsel asked Dr. Hammon for dates she would be available for a deposition. Dr. Hammon said she did not believe her deposition would be in the best interest of the twins. Bridget's counsel also opposed the deposition of Dr. Hammon. Blaine did not immediately press the issue.

On March 17, the parties filed their witness and exhibit lists. Neither identified Dr. Hammon as a witness. However, both reserved the right to call anyone as a rebuttal witness. Four days later, Bridget filed a motion for a protective order to prevent Blaine from taking Dr. Hammon's testimony.

On the same day, March 21, ten (10) days before the hearing, the FOC filed his report, identifying Dr. Hammon among those he interviewed.

On March 27, in accordance with KRS[1] 403.300(3), Blaine requested the FOC to send him his file of underlying data, reports, including diagnostic reports. Although the FOC made an attempt to send the requested data that day, he mistyped Blaine's counsel's email address. Blaine did not receive the data until the morning of the hearing, March 31.

On March 28, the family court entered an order that Blaine "may not compel the testimony of Dr. Hammon by deposition or otherwise as the same is contrary to the best interests of the children."

On March 30, Blaine moved to exclude the FOC's report and testimony claiming he had too little time to review the report, and that both would be based on inadmissible hearsay from Dr. Hammon. He also sought to exclude evidence of the proceedings of the 2019 oral settlement conference, including the notes taken by Drs. Marvin and McCrary, pursuant to KRE[2] 408, as inadmissible statements made during settlement efforts. The court ruled after the hearing.

Blaine's counselor was the only non-party witness to testify on March 31, so the hearing was continued until May 3 when the remaining witnesses, including the FOC, gave additional proof.[3] The hearing concluded that day.

---

[1] Kentucky Revised Statutes.

[2] Kentucky Rules of Evidence.

[3] According to the inventory of the record on appeal, the circuit clerk did not transmit to this Court a copy of the video of any hearing. Our understanding of what occurred at the hearing is gleaned

On June 6, 2023, before the family court decided the issues addressed in the hearing, Blaine filed a motion to strike the FOC's report and testimony because he did not have a meaningful opportunity to challenge the FOC's sources.

The family court entered an order on June 29, 2023, denying Blaine's motions regarding the FOC's report and testimony, and denying Blaine's motion to remove the supervision requirements of visitation with his daughters.

Blaine appeals, raising seven arguments. We will address only those necessary to our review.

## STANDARD OF REVIEW

"[W]e may not set aside the family court's factual findings unless they are clearly erroneous." *Block v. Block*, 252 S.W.3d 156, 159 (Ky. App. 2007) (citing *Wheeler v. Wheeler*, 154 S.W.3d 291, 296, (Ky. App. 2004)); CR[4] 52.01. Review for clear error requires our determination whether substantial evidence supports the trial court's findings. *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 72 (Ky. 2010) (quoting *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F.*

---

from other references in the record that was transmitted. "[I]t is an appellant's responsibility to ensure that the record contains all of the materials necessary for an appellate court to rule upon all the issues raised." *Clark v. Commonwealth*, 223 S.W.3d 90, 102 (Ky. 2007) (footnote and citations omitted).

[4] Kentucky Rules of Civil Procedure.

*Goodrich Chem. Co.*, 474 S.W.2d 367, 369 (Ky. 1971).  We review a family court's legal conclusions *de novo*.  *Marshall v. Marshall*, 559 S.W.3d 381, 383 (Ky. App. 2018).

## ANALYSIS

In terms of judicial error, Blaine's seven (7) arguments fall naturally into two categories:  (1) violations of Blaine's due process rights under KRS 403.300, and (2) erroneous rulings on evidence, sequestration of witnesses, and findings of fact.  Because we find merit in Blaine's argument regarding the family court's due process violations (as expressed in his first four arguments), his remaining arguments are moot.

1. *The family court erred by allowing testimony and admitting report of FOC*.

Family courts are authorized to order investigations and reports on custodial arrangements, to be performed by a friend of the court or by another agency selected by the court.  FCRPP[5] 6(2)(f); KRS 403.300(1).  Such reports necessarily include first and second-level hearsay statements presenting due process challenges.  Section three of KRS 403.300 contains due process protections that kick in once the FOC completes his report and files it with the court.  "If the requirements of subsection (3) are fulfilled, the investigator's report

---

[5] Kentucky Family Court Rules of Procedure and Practice.

may be received in evidence at the hearing." KRS 403.300(2). Some of these protections arise before the hearing and some during it.

First is a notice requirement. "The clerk shall mail the [FOC's[6]] report to counsel and to any party not represented by counsel at least 10 days prior to the hearing." KRS 403.300(3). The statute will "allow the [FOC's] report into evidence *only if* the report is made available to the parties at least 10 days before the hearing . . . ." *Greene v. Boyd*, 603 S.W.3d 231, 239 (Ky. 2020) (emphasis added). That requirement was satisfied in this case when the report was sent to Blaine on March 21, ten days before the hearing.

The next due process protection is a pre-hearing right to acquire the written materials upon which the FOC relied to prepare his or her report. Upon request, "[t]he [FOC] shall make available to counsel and to any party not represented by counsel the [FOC's] file of underlying data, and reports, complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (2), and the names and addresses of all persons whom the investigator has consulted." *Id.* at 239-40. Providing this material is another required pre-

---

[6] The word used in KRS 403.300 is "investigator." In *Greene v. Boyd*, the Kentucky Supreme Court called this position "the court-appointed Friend-of-Court investigator (FOC) . . . ." 603 S.W.3d 231, 233 (Ky. 2020). This was obviously intended to distinguish a "friend of the court or de facto friend of the court" appointed by a judge pursuant to FCRPP 6(2)(f) from the "friend of the court" authorized by a fiscal court resolution pursuant to KRS 403.090(1). *Greene* was decided a mere five (5) months after adoption of the Kentucky Family Court Rules of Procedure and Practice. FCRPP 6. The rule itself fails to make the distinction.

hearing predicate to admission of the FOC's report in evidence at the hearing. KRS 403.300(2), (3). Blaine argues that because the FOC failed to comply with this requirement, the report and the FOC's testimony should be stricken. We disagree.

Our Supreme Court interprets the due process protections of KRS 403.300(3) as requiring "*sufficient notice* of the report and its sources and the *opportunity to refute them . . . .*" *Greene*, 603 S.W.3d at 240 (emphasis added). "[I]n all cases the family court should strive to allow the parties reasonable time to exercise the ability to challenge the report's sources." *Id.* at 241. It is true that Blaine did not receive the underlying data until March 31, the day the hearing began. However, the FOC did not testify that day nor was his report offered as evidence then. Blaine had more than a month to examine the underlying materials before cross-examining the FOC on May 3. The communications glitch that delayed the FOC's delivery of the materials to Blaine did not deprive him of "sufficient notice" of the report's sources nor of "the opportunity to refute them[.]" *Id.* at 240. However, the family court's March 28, 2023 protective order prohibiting Blaine from "compel[ling] the testimony of Dr. Hammon by deposition or otherwise" did deprive him of that opportunity.

In *Morgan v. Getter*, the Kentucky Supreme Court made it very clear that Blaine had a right to cross-examine Dr. Hammon:

[T]he parties' right to due process includes the right to cross-examine the authors . . . of evidentiary reports upon which the fact finder is entitled to rely. Not only is this result consistent with the holdings of other courts confronted by the issue, but it comports with KRS 403.090, KRS 403.290, and KRS 403.300 as well. Those statutes, while authorizing a custody-determining court to *sua sponte* request custodial investigations and other advice, all require that the parties be made aware of the court's inquiries and be allowed to cross-examine the court's sources of information. The parties' right to due process requires no less.

441 S.W.3d 94, 112 (Ky. 2014) (citations omitted). The family court's protective order violated Blaine's due process right to cross-examine a source of the FOC's report, the children's own therapist – Dr. Hammon. As the Supreme Court put it, it is "error to admit and consider statements contained within the FOC's report without giving the parties a meaningful opportunity to challenge the sources of those statements." *Greene*, 603 S.W.3d at 239. The family court here expressly denied Blaine that opportunity altogether.

We are not persuaded by the family court's explanation for denying Blaine's challenge to the FOC's report and testimony. The family court said the report "does not include any statements by Dr. Hammon, nor does it reflect any information gleaned from Dr. Hammon." However, the FOC expressly identified Dr. Hammon as a professional he interviewed. Furthermore, not until Blaine received the written materials underlying the FOC report did he learn Dr. Hammon

refused to prepare a written report to the FOC. Whatever she had to say to the FOC, she conveyed verbally.

There are references to Dr. Hammon's viewpoints in the FOC's report which could only have been included as first or second-level hearsay. That is to say, the source of the information was either Dr. Hammon's verbal interview with the FOC or second-level hearsay expressed by the parties or their children. For example, the report says: "Dr. Hammon has worked and continues to work to build the children's trust and perhaps, in some way, that is threatening to Blaine. The FOC . . . wishes to encourage that therapeutic bond." Who but Dr. Hammon told the FOC about her work to bond with the twins and how they reacted? Who but Dr. Hammon is more likely to believe her bond with the children threatens Blaine?

The FOC confirmed the obvious at the hearing – the testimony of the children's therapist is far from inconsequential. Prohibiting Blaine from exercising the statutory right to have Dr. Hammon substantiate what she told the FOC in her interview directly violates the due process necessary for Blaine to protect his right to parent his children. *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000) ("The liberty interest . . . of parents in the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this Court.").

Bridget's suggestion that Blaine waived the right to cross-examine Dr. Hammon because he "never . . . issued a notice of deposition" is fallacious. Although *Greene* indicates a party need not wait until the hearing to depose and cross-examine the source of an FOC report, we conclude the right to confront such sources at the hearing is not waived if no such pre-hearing effort is made. *Greene*, 603 S.W.3d at 239 ("parties can cross-examine the sources up until the time the hearing begins"). Nevertheless, in this case, Blaine did make the effort to depose Dr. Hammon before the hearing but neither she nor Bridget would cooperate. Then, the family court's pre-hearing protective order outright prohibited it.

Bridget's other argument for waiver – Blaine's failure to name Dr. Hammon on his witness list – is similarly unavailing. "A party may not waive his right of cross-examination prior to the hearing." KRS 403.300(3). The statute thus makes it impossible that Blaine waived his statutory right before the hearing commenced. The statute prohibits it. That same provision also defeats the argument that Blaine's declination of a continuance constitutes a waiver.

On the other hand, the statute does not prohibit a waiver of this right to confront the FOC's sources once the hearing commences. Setting aside whether this statutory right to confront witnesses in custody cases deserves the same measure of protection as the Sixth Amendment right in criminal cases, we are confident that waiver of the right "cannot be presumed from a silent record." *D.R.*

-11-

*v. Commonwealth*, 64 S.W.3d 292, 294 (Ky. App. 2001) (addressing waiver of Sixth Amendment right to confront accusers). This record is silent on the issue whether Blaine expressed a knowing, intelligent, voluntary waiver of the right to cross-examine Dr. Hammon. To the contrary, his continued objection to the FOC's testimony and report based on deprivation of the right weighs against it.

Finally, this specific due process right to challenge the FOC's sources is sufficiently important that the Supreme Court said the law provides "ample opportunity for the parties to challenge the sources of the FOC *even after the hearing is held*[.]" *Greene*, 603 S.W.3d at 241. Blaine did present such a post-hearing challenge. The family court erred by denying his challenges during and after the hearing.

Because the family court violated Blaine's statutory right to cross-examine Dr. Hammon, the statutory requirements for admitting the FOC's testimony and report were lacking. Therefore, we vacate the family court's June 29, 2023 order and remand for a new hearing.

2. *Blaine's remaining arguments are moot*.

Blaine also argues the family court erred because it allowed inadmissible evidence of settlement negotiations in violation of KRE 408. Bridget responds by acknowledging it is "well settled that settlement negotiations are not admissible" but she posits that the family court "did not admit such statements."

-12-

Because we are vacating the order and remanding the case for a new hearing that protects Blaine's due process rights, either party may seek to introduce the evidence he or she deems appropriate. The family court's rulings responsive to a subsequent challenge to the evidence will be subject to the usual panoply of appellate rights. The argument regarding the ruling in the prior hearing is moot.

Similarly, Blaine's argument relating to the sequestration of witnesses during the prior hearing is moot. Should the issue again arise, the family court can find guidance in *McAbee v. Chapman*, 504 S.W.3d 18 (Ky. 2016).

Blaine complains the family court's order includes numerous errors of fact. But that order is set aside and the argument, like these others, is moot.

### CONCLUSION

The Jefferson Family Court's June 29, 2023 Order is hereby VACATED and the case is REMANDED with instructions to conduct a new hearing consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Hugh W. Barrow
Louisville, Kentucky

BRIEF FOR APPELLEE:

Mary Rives Chauvin
Louisville, Kentucky